## MAGNOLIA PETROLEUM CO. et al. v. SAYLOR.

No. 9279—Opinion Filed April 29, 1919.

(180 Pac. 861.)

(Syllabus.)

### 1. Estoppel—Act of Third Party—Loss as Between Two Innocent Parties.

When one of two innocent persons must suffer by the acts of a third, the one who enables the third person to occasion the loss must sustain it, and what one induces an-

other to regard as true is the truth between them if the other has been misled thereby.

## 2. Oil and Gas—Lease—Consideration—Mutuality—Termination by Lessor.

S. executed an oil and gas lease covering certain lands in Lincoln county, Okla., to H. for the term of five years, for a cash consideration of $240. The lessee agreed to pay to lessor one-eighth of the oil produced, and to pay a stipulated sum per annum for each gas well; and, further, to complete a well on said premises within 12 months from the date of the lease, or pay $240 quarterly in advance for each year such completion was delayed. The lease contained a further provision that upon the payment of $1 at any time to the lessor, the lessee should have the right to surrender the lease for cancellation. In an action brought by the lessor to cancel the lease for the reason that the same was unilateral and void, held, that the cash bonus paid supports each and all the covenants of the lease; that the agreement is not void for want of mutuality; that although no well had been commenced on the premises, the lessor had not the option to refuse timely tender of payments and terminate the lease.

Error from District Court, Lincoln County; Chas. B. Wilson, Jr., Judge.

Action by Lucy S. Saylor against the Magnolia Petroleum Company, a joint-stock association, and the Corsicana Petroleum Company. Judgment for plaintiff and defendants bring error. Reversed and remanded with directions to enter judgment for defendants on condition.

Geo. C. Greer, W. H. Francis, B. B. Blakeney, J. H. Maxey and W. H. Harris, for plaintiffs in error.

Thos. G. Andrews, for defendant in error.

PITCHFORD, J. On the 25th day of April, 1917, the defendant in error commenced this action in the district court of Lincoln county, Okla., against plaintiffs in error, seeking the cancellation of a certain oil and gas mining lease. For convenience the parties will be designated as they appeared in the court below. The plaintiff alleges that she is an old lady and unused to business ways and dealings, and having no experience in the leasing of lands for oil and gas mining purposes, and knowing nothing of the manner in which the said business is transacted and carried on; that the defendants are each corporations; that on or about the 25th day of November, 1914, the plaintiff made, executed, and delivered to W. S. Hillyer a certain oil and gas mining lease covering certain lands situate and being in Lincoln county, Okla. The lease was to run for 5 years, the consideration being $240, paid at the ex-

ecution of the lease; and for the further consideration of the development of said tract of land for the production of oil and gas thereon and the payment of a portion thereof, to wit one-eighth of the oil and certain cash payments for gas to the plaintiff. The lease provided, further, that the said Hillyer, the lessee, his heirs and assigns, would drill a well on the land so leased commencing within 12 months from the date thereof, or thereafter pay to the plaintiff annually the sum of $240, payable quarterly in advance until said well was commenced; and it was further provided that the said Hillyer, his heirs, successors, or assigns, should have the right at any time, upon the payment of $1 to the lessor, her heirs or assigns, to surrender said lease for cancellation, after which the payments and liabilities thereafter to accrue under and by virtue of its terms should cease and determine. The said lease was executed in duplicate. The plaintiff at the time of the execution thereof resided in the state of California, at which place the same was duly executed by her, she keeping one duplicate original and sending the other to her agent at Stroud, Okla., by whom it was delivered to the lessee, W. E. Hillyer. The plaintiff alleges that the duplicate delivered to the lessee has been, without her consent, altered in the following clause:

"The party of the second part agrees to commence a well on said premises within twelve months from the date hereof, or thereafter to pay the first party a yearly rental of $240, payable quarterly in advance until said well is commenced."

—by substituting the sum of $160 payable quarterly in advance until said well was commenced. Plaintiff alleges that she did not at any time give any one authority to make any changes in the lease, and that by reason of the change so made the lease has been destroyed, and that the same is void and of no effect, and is a cloud upon the title of this plaintiff to the lands described in the lease.

The defendants claim that they acquired the lease in good faith, and for value, and in the ordinary course of business, and without notice or knowledge of any defect or alteration therein or defense thereto, and that they become each an innocent purchaser and holder thereof; and, further, that if, in fact, there was any alteration in the lease, or in the duplicate original thereof in their possession such alteration was made prior to the time when the said lease was so assigned and transferred to them, and without notice to, or knowledge of, either of the defendants. The interest in the lease acquired by the Corsicana Petroleum Company was assigned.

prior to the commencement of this action, to the Magnolia Petroleum Company, and all interest in the lease is now lodged in the Magnolia Petroleum Company.

The plaintiff seeks to have the lease canceled on two grounds:

First. That the lessee had made the alteration above mentioned without her authority or consent; that the alteration was material, and therefore the lease was void; that instead of paying the $60 per quarter, being the amount specified in the duplicate retained by the plaintiff, the defendants only paid $40, which last sum was received by the plaintiff through her ignorance and inexperience, and through her being unaccustomed to business affairs, etc.

Second. That under the terms and provisions, the lease was nudum pactum and void as against the plaintiff.

The trial court failed to make any findings of fact. There seems to have been no request by either side for such findings, the judgment rendered being general in its terms and not indicating upon which ground the court decided. Whether the judgment of the trial court was upon the alleged alteration or the surrender clause, or whether it was on both, we have no way of ascertaining. We are therefore confronted at the threshold with the two propositions, and the only two which we deem necessary to consider for a proper determination of the appeal.

First. Did the court err in rendering judgment for the plaintiff on the ground that the lease was subject to cancellation for material alteration?

Second. Did the court err in holding that the plaintiff was entitled to the cancellation of the lease under the surrender clause thereof?

We have seen that the lease was executed on the 25th of November, 1914, the lessee agreeing to commence a well within 12 months from the date thereof, or thereafter to pay $240 yearly rental in advance, payable quarterly. The lease provided, further, that all payments should be made directly to the lessor, or deposited to her credit in the First National Bank of Stroud, Okla. On the execution of the lease, there was paid to the plaintiff $240 cash. The lessee reserved the right at any time on payment of $1 to the lessor to surrender the lease for cancellation. We deem it unnecessary to set out the lease in full, the same being the usual "or" gas and oil lease. On the 13th day of February, 1915, W. S. Hillyer, the original lessee, wrote to the plaintiff the following letter:

"Miss Lucy Saylor, No. 229 E. San Salvador St., San Jose, Cal.—Dear Miss Saylor: Beg to say I am the party that wrote up your lease from Mr. Schubel some time back. I turned this to my people and we have certainly had a time with the abstract. I bought the abstract personally and paid for it, and upon examination, the attorney finds that in 1902, Thos. P. Gaskin made a deed to R. C. Daniels to your place. Now Mr. Gaskins owned the northeast quarter and you own the northwest quarter, and in making out the deed, he made a mistake and described your quarter. R. C. Daniels is a negro and has fled this country some years ago, and we are trying to locate him so as to get a quitclaim deed from him to you. We have located him somewhere in Canada and expect returns within the next ten days or two weeks.

'Now, after all this work, while I was in Tulsa the other day, we went over to the bank to look at your lease, and to our surprise it reads $240 and cash, which is all right, but $1.50 rentals. Now, there is no place in this country renting for $1.50 rentals, and my people absolutely refuse to take the lease except for $1 rentals. With your cash bonus of $240 and $1 rentals, you are getting a big price. I am writing this hoping you will give me authority to change the rentals from $1.50 to $1.00. Should you not accept this rental, I hope you will see fit to reimburse me for the abstract which I will send to you and the expenses I have been out.

"Thanking you for an early reply

"Yours truly,    W. S. Hillyer."

The plaintiff says she received the foregoing letter, and had her attorney answer it. However, it does not appear from the evidence that the attorney did in fact answer the letter, and, if he did, there is nothing to show that W. S. Hillyer received the answer; but, be this as it may, we find on or about January 30, 1915, Hillyer assigned the lease to one D. C. Satterlee, and on the 12th day of February, 1915, Satterlee, for a valuable consideration, assigned the lease to the Corsicana Petroleum Co. At the time the lease was assigned to the last-named company, it had been recorded, and on the 2d day of March, 1915, the Corsicana Petroleum Company had the lease, together with the assignments, recorded in the office of the county clerk of Lincoln county. On the 20th day of October, 1916, the Corsicana Petroleum Company sent to the plaintiff $40 for the first quarter, extending the lease from November 25, 1915, to February 25 1916. The plaintiff acknowledged receipt of the above sum in the following letter inclosing receipt:

"Morro, Cal.  Oct. 28, 1915.

"Mr. W. L. Neal, Dear Sir: Yours of Oct 20th and money received. Inclosed find receipt dated and signed. Am sorry there is a delay on account of the change in my

residence. I shall be very unsettled next year, but will try and inform you whenever I make a change in add. I expect to be here until late spring.

"Resp. Mrs. Lucy S. Saylor.

"Add Morro, San Luis Obispo Co., Cal."

Receipt.

"No. 2003 K113. $40. Being rental from Nov. 25, 1915, to Feb. 25, 1916.

"Received Oct. 28, A. D. 1915, of the Corsicana Petroleum Co. forty and no/100 in full for rent for continuing from Nov. 25, 1915, to Feb. 25, 1916, a certain lease for oil and gas purposes made by Lucy S. Saylor of 160 acres situated in Lincoln county state of Oklahoma, bearing date Nov. 25, A. D. 1914, and recorded in records of Lincoln county, in Book 17, at p. 267.

"[Signed] Lucy Saylor."

Thereafter the Corsicana Petroleum Company transferred the lease to the Magnolia Petroleum Company, and on the 31st day of January, 1916, the Magnolia Petroleum Company sent the plaintiff $40, continuing the lease from February 25 to May 25, 1916, evidenced by the following letter and receipt:

"San Jose, Jan. 31, 1916.

"Magnolia Petroleum Co., Yours of Jan. 20 was duly forwarded to me from Morro, San Luis Obispo Co. I shall be in Morro again after next week until June 1, 1926, when next payment comes due.

"Yours respectfully, Mrs. Lucy Saylor."

Receipt.

"No. 2003 $40 A356. Being rental from Feb. 25, 1916, to May 25, 1916.

"Received _____, A. D. 19—, of the Magnolia Petroleum Co. $40.00 in full for rent for continuing from Feb. 25, 1916, to May 25, 1916, a certain lease for oil and gas purposes, made by Lucy S. Saylor, of 160 acres situated in Lincoln county, state of Oklahoma, bearing date Nov. 25, 1914, and recorded in records of Lincoln county, on Book 17, at p. 267.

"[Signed] Lucy S. Saylor."

On the 7th of April, 1916, the plaintiff then being in Stroud, Okla., wrote the Magnolia Petroleum Company to the effect that she was making a change in her residence, and requested that the next payment be sent to her at her then place of residence. On the 20th of April, the Magnolia Petroleum Company deposited to the plaintiff's credit $40 in the First National Bank at Stroud. The plaintiff was notified of the deposit by the defendant on the same day. The bank executed to the defendant a receipt acknowledging the $40 and extending the lease from May 25 to August 25, 1916. Upon receipt of the letter from the defendant notifying her of the above deposit, the plaintiff delivered the letter to her attorney at Stroud. The attorney then wrote the defendant that he had examined the records at Stroud, and found that the lease as recorded provided for $160 rental, but that the lease had been altered, and the rental provided for in the lease originally was $240. The letter further stated that suit for cancellation had, on that date, been filed. On May 17, 1916, the defendant wrote to the plaintiff, who was then at Nableville, Ill., the following:

"Dear Madam: We have gone into the matter of the oil lease which we hold on your land in Lincoln county quite thoroughly on our own investigation, and by conference with your attorney. We believe that you and your attorney are satisfied that whatever faults or misdeeds may have been committed in the transaction are not chargeable to us, and if alteration was made in the lease after execution, it was beyond our knowledge. We are willing to accept the facts as stated by you and to make the payment of rental as you stated the original contract was drawn and have the record corrected to agree with it so that you will receive $60 per quarter instead of $40 per quarter as rental."

The plaintiff refused to accept the terms offered by the defendant, but proposed to execute a new lease for a bonus of $1,600. There is no conflict in the evidence regarding the alteration of the duplicate lease delivered to the original lessee, Hillyer. At the time the alteration was made, the plaintiff was informed that no sale could be made of the lease by reason of the $1.50, when $1 per acre was the highest price being paid in that territory for leases. Hillyer asked the plaintiff to give him authority to make the change, and, if she would not consent to the change that she pay him for the abstract. As we have seen, the lease was executed in duplicate, each duplicate being in fact, an original. It is not necessary to pass upon the question as to whether or not the plaintiff would be estopped from asserting the right to cancel if the lease had never been assigned by Hillyer. If Hillyer, after writing the foregoing letter to the plaintiff, had made the alteration, and had thereafter paid the rentals as were paid by the Corsicana and Magnolia Companies, and the plaintiff acted in all respects as she has in receiving these payments from defendants, we are not prepared to say that a court of equity would grant the relief she demands. She was informed that the lease providing for $1.50 per acre rentals was absolutely worthless, and that Hillyer could do nothing with the same

unless he was authorized to change the rentals to $1. Thereafter she received the $40 and receipted therefor, the receipt expressly reciting that the $40 was in full of the quarter, and extended the life of the lease for 3 months. It clearly appears that this payment was at the rate of $1 per acre. During all this time, the plaintiff had in her possession the duplicate, and states that the reason she did not make any objections to the $40 was that she thought that was the full amount due; that her copy of the lease was locked up in the box in the bank, and that she supposed that the checks were for the amounts due. There is no pretense that any one used any undue influence or in any manner prevented her from examining the duplicate lease in her possession and sole control. The destruction, the alteration, or any changes in the duplicate in the possession of the lessee Hillyer could not affect in any way the rights of the plaintiff. Section 990, Rev. Laws 1910, says:

"The intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act."

Section 991 of said statute says:

'Where a lease is executed in duplicate, an alteration or destruction of one copy, while the other exists, is not within the provisions of the last section."

In Jones v. Hoard, 59 Ark. 42, 26 S. W. 193, 43 Am. St. Rep. 17, the court said:

"Where a lease is executed in duplicate, each party retaining a counterpart, the lessee's unauthorized alteration of his counterpart, though it annuls it, does not affect his rights under the contract actually made."

In Lewis & Lewis v. Payn, 8 Cow. (N. Y.) 71, 18 Am. Dec. 427, it is said:

"Where a lease is executed in duplicate, each party receiving one, both are originals; the fraudulent alteration of one of them, by the party holding it, does not destroy his estate under it, if the other remains intact."

To the same effect see Hayes v. Wagner, 220 Ill. 256, 77 N. E. 211.

The foregoing authorities are not cited with a view of justifying any wrong committed by Hillyer in making the alteration, but only for the purpose of showing that the plaintiff could in no event be injured thereby, all her rights being fully protected by the duplicate in her possession. It appears the plaintiff was satisfied with the $40 per quarter, and at no time made any complaint until she reached Stroud, at which time she says in conversation with her agent there and her brother, who had just arrived from Chicago, she was informed that the rentals were $1.50 per acre instead of $1. She says she then went and examined her duplicate of the lease, and discovered that she was entitled to $60 per quarter instead of $40. Evidently she had the lease with her in Stroud. There is no evidence that she had ordered the same sent her from her bank in California. While it is true, all courts, as well as individuals, should be, and the great majority are, disposed to assist and protect the aged and infirm, where it is seen they need protection, yet we fail to discover in the instant case wherein the plaintiff's age rendered her in any way incompetent to transact business; on the contrary, she manifested a keen memory and an alertness in looking after her own interests. She had been transacting her own business all her life; she had owned a farm near Stroud, and had leased the same every year for about 12 years for agricultural purposes. The defendant when informed of the alteration offered to carry out the terms of the lease as shown by the duplicate in the possession of the plaintiff. Plaintiff, however, seemed not to have been willing to abide by these terms, but demanded a bonus of $1,600 for a new lease. Conceding that Hillyer, the original lessee, committed a wrong and made the alteration without authority from the plaintiff, still the plaintiff was not justified in closing her eyes and for more than 1 year failing to examine the duplicate in her possession, especially when her attention had been specifically called to the fact that it was impossible to use the lease with the $1.50 rentals, and thereafter, knowing that the lease had been assigned, and receipting for the same at the rate of $1 per acre from an innocent purchaser as disclosed by the evidence, she is and should be estopped from now claiming the right to have the lease cancelled.

This rule is well expressed in the principle that whenever one of two innocent persons must suffer by the acts of a third, he who enables such third person to occasion the loss must sustain in. 16 Cyc. 681.

"What I induce my neighbor to regard as true is the truth between us, if he has been misled by my asseveration." Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79.

The defendant Magnolia Petroleum Company, as we have seen, purchased the lease from the Corsicana Petroleum Company after the same had been recorded and after the first quarterly payment, being $40, had been made to the plaintiff and receipted for. The lease as recorded disclosed that the

rentals were $1 per acre. The receipt showed a payment of $40 in full of the first quarter for the rent on the 160 acres. If a wrong had been perpetrated on the plaintiff she had all the information in her power that would enable her to detect the wrong. It is a well settled principle of equity that no one can maintain an action for a wrong where he consents to the wrong, and one who fails to forbid what he can forbid and what he should forbid is held to assent.

The defendant, having no knowledge that the alteration had been made, coupled with the further fact that the plaintiff had had in her possession for over 1 year the duplicate original retained by her, wherein a different rental was mentioned, and the plaintiff during all this time having an opportunity to examine her lease, and either through carelessness or indifference failing to do so until long after the defendant had acquired the lease, we are of the opinion that it would be extremely inequitable, under all the facts and evidence in the case, to give the relief she has demanded.

In Leonard v. Shale et al., 266 Mo. 123, 181 S. W. 16, it is said:

"The agent of a landowner, having negotiated a sale, directed that the deed be sent to the father of the grantee. The father without authority delivered the deed, and it was placed on record; the grantee going into possession. Such grantee remained in possession for a considerable period of time after that fact was known to the landowner and his agent before any attempt was made to expel him or cancel the conveyance. Held that, the landowner having negligently placed the deed in such a situation that the grantee might procure it, he was estopped to deny the validity of a deed of trust given by the grantee while in possession and accepted by defendant in good faith."

In Bostwick v. Mutual Life Ins. Co. of N. Y., 116 Wis. 392, 92 N. W. 246, 67 L. R. A. 705, the court spoke as follows:

"A person who, in a business deal with another, signs a written instrument, is conclusively presumed, as to that other and all persons claiming under him through such instrument, to know the contents thereof, no fraud or deceit being used by such other or by any one for whose conduct he is responsible, reasonably calculated to and which does induce such person to become a party to such instrument without reading it."

"Mere ignorance of the contents of a paper by one who becomes a party thereto under a mistake as to its import, will not enable him to avoid his act."

"He who is excusably negligent in a business transaction forfeits the right to judicial remedies for relief, and not because of any favor or indulgence which the law extends to the wrongdoer, but because of failure on the part of the injured person to exercise that care for his own protection which the policy of the law requires as a condition of its protection; such policy being to aid only those who exercise some reasonable care to guard their own interests."

In Schaller v. Railway Co., 97 Wis 31, 71 N. W. 1042, the court said:

"From the delivery and acceptance of the bill of lading at the time the goods were delivered to defendant for shipment, the presumption arises that plaintiff assented to it. * * * The presumption is not conclusive; but mere ignorance of the contents of the bill of lading arising from failure to read it or to make some reasonable effort to obtain information in that regard, in the absence of any evidence of fraud on the part of the defendant or of the use of any means to deter the shipper from fully understanding the contract, is not sufficient to overcome it. * . * *

"The familiar rule applies that if a person makes a written contract with another he takes upon himself the responsibility of acting intelligently, and exercising ordinary care to inform himself of its provisions. Failure to read the contract or to examine it, or, in case of inability, to do so without assistance, to obtain assistance if reasonably within reach, is negligence as a matter of law."

See, also, 10 R. C. L. 694, 695; Hill v. Atlantic & N. C. R. Co., 143 N. C. 539, 55 S. E. 854, 9 L. R. A. (N. S.) 609.

We are therefore of the opinion and so hold that the lease is not void as against the defendant by reason of the alteration for reasons above stated.

The remaining question to be considered is as to the invalidity of the lease under and by virtue of what is known as the surrender clause. In justice to the trial judge, we desire to say that at the date of the trial of this cause the rule announced in the care of Brown v. Wilson, 58 Okla. 392, 160 Pac. 94, L. R. A. 1917B. 1184, was controlling in Oklahoma, and was binding upon the district court, and under the rule therein announced the trial court was without authority to question the wisdom, propriety, or correctness of the law therein announced, and, regardless of what his individual views might have been in the premises, was forced to hold the lease void under the surrender clause; the lease therein considered being in all respects similar to the one on the instant case.

The rule announced in the Brown v. Wilson Case, supra, was followed by other decisions of this court until the case of North-

western Oil & Gas Co. v. Branine, 71 Okla. 107, 175 Pac. 533, decided October 8 ,1918. Justice Hardy, in delivering the opinion of the court, said:

"Where a cash bonus of $160 was paid for an oil and gas lease, which provided that lessee should commence the drilling of a well within 12 months from the date thereof or pay a quarterly rental of $40, and further provided that the lessee might, at any time upon the payment of a further sum of $2 and as accrued liabilities, surrender the leased premises and terminate all future liabilities under the lease, held, that the cash bonus supports each and all the covenants in the lease; and held, further, that the presence of a surrender clause in said lease did not render the same void for want of mutuality nor confer on the lessor the right to terminate said lease at will."

It was futher held in the case just cited that the court had no right to fractionize a contract nor divide it up into sections, and say that the cash bonus supported any particular covenant to the exclusion of another, when such construction would be contrary to the clear intention of the parties as gathered from the face of their written agreement:"

In the later opinion of this court, Rich v. Doneghey, 71 Okla. 204, 177 Pac. 86, the rule announced in Brown v. Wilson, supra, was in express terms overruled. Justice Miley, delivering the opinion of the court, said:

"In Brown v. Wilson, 58 Okla. 392, 160 Pac. 94, L. R. A. 1917B, 1184, it was not held that $1 was not a valuable or sufficient consideration, but, on the contrary, it was distinctly recognized as such. In that case the lease was for a recited consideration of $1 and the covenants and agreements of the lessee therein contained. It was for a term of 10 years and as long thereafter as oil or gas was produced. Certain stipulated royalties on the oil and gas produced were provided, and the lessee covenanted to complete a well within 4 months, or pay at the rate of $80 in advance for each additional 3 months such completion was delayed, and also contained a surrender clause. In the majority opinion it was said that the only consideration for the lease, as a whole, was development, and, with reference to the $1, it was said: 'We hold that the dollar paid Ruhl [the lessor] at the time of the execution and delivery of the lease was the sole and only consideration paid to hold the lease for the 4-month term within which the lessee had to enter and complete a well, and that such consideration did not extend to uphold any other stipulation in the lease; and, further, that the agreement on the part of the lessee to pay delay money after that time was a provision made for the sole purpose of prolonging the lease.'

"In other words, the 'contract' in that case

was held to be an agreement to lease for successive quarterly terms, after an initial term of 4 months, and the payment of, or a binding obligation to pay, a distinct and independent consideration for each succeeding quarter was held essential. By construction, the $1 was held to support the lease for the first term of 4 months only; and since, as it was held, by reason of the surrender clause the lessee was not obligated to develop or pay the stipulated sum of $80 for each of the succeeding quarters, there was no consideration for the agreement to lease after the first term of 4 months. Had it been then thought that the $1 supported the lease for the term of 10 years instead of only the first 4 months thereof, it is probable that the majority of this court would have reached a different conclusion in that case on the question now under consideration. The error in that opinion, in this connection, as we now see it, was in the portion we have quoted above, that the $1 consideration supported only a 4-months term, and did not extend to and uphold any other stipulation in the lease. That portion of the opinion has been overruled in effect by the recent decision of this court in Northwestern Oil & Gas Co. v. Branine. * * *

"The form of the written agreement in the Branine Case and the one in this is the same. The only difference between the two agreements is as the amount of the consideration, and, as before stated, that is not material to the questions raised in this case as to the alleged invalidity of the grant for want of consideration. We cannot construe the grant here into one for 6 months from its date, with an option to extend the same beyond that term for successive monthly periods, without doing violence to the clear intention of the parties as expressed in unambiguous language. Their language is: 'It is agreed that thiss lease shall remain in force for a term of five years from this date, and as long thereafter,' tc.—

"That language can have but one meaning. Such meaning is not changed or rendered doubtful by the subsequent covenant that the lessee shall during that term, complete a well within a specified time or pay for subsequent periods of delay. These subsequent covenants have no bearing on the terms of the grant, except in so far as failure to comply therewith may operate as an abandonment, or cause a forfeiture thereof, if the agreement should so provide. No other construction, without doing violence to the plain meaning of the language employed, can be placed in the writing as a whole than that the recited consideration of $1 is for the grant for the entire term of 5 years, and as long thereafter as either oil or gas is produced, and also the right of termination given the lessee upon compliance with the conditions thereto attached.

"We therefore conclude that the grant or

so-called 'lease' for the full term expressed is supported by an independent - valuable consideration, and is therefore not void for want of mutuality, and Brown v. Wilson, supra, holding otherwise, is on this point overruled.'

The principle announced in the above case is practially the same as that in Shaffer v. Marks (D. C.) 241 Fed. 151, in which Justice Campbell said:

"It will be seen from an examination of Brown v. Wilson, supra, that in that case the court first considered the question as to whether the lessees had not forfeited their rights under the lease by failure to make the payments of delay or rent money, in strict accordance with the terms of the lease, and decided that there had been such delay as entitled the lessor to assert and have declared a forfeiture, very much as was done in the Frank Oil Co. Case, supra [29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487]. And if, at the time this last-mentioned case was decided, the court had entertained the same view as to the right of the lessor to refuse to accept a payment tendered in strict accordance with the terms of the lease, no reason is perceived why the court would not in that case have announced the doctrine which would have been decisive of that case, without the necessity of determining whether or not the delay in the tendering of such payment worked a forfeiture. The very fact that the court did not so do, together with the observations made by the court in the Frank Oil Company Case and prior cases to which reference has already been made, it seems to me, warranted the conclusion, until the announcement in the Hill Oil & Gas Co. Case [53 Okla. 748, 157 Pac. 710] and Brown v. Wilson, that the 'or' surrender clause lease, like the one at bar, as well as the 'unless' lease, based upon a valuable consideration, while probably not the subject of equitable relief by way of specific performance in the state courts, were, however, valid contracts in the nature of options to the lessee to explore for oil and gas during the initial period fixed and such additional time as might be secured by such subsequent payments as the lease provided for, and that the initial consideration covered not only the first period mentioned, but also the right to extend the time by making the delay or rent payments in accordance with the contract, and that the lessor was bound to accept such delay or rent payments when so made."

In Lindlay v. Raydure (D. C.) 239 Fed. 928, we quote as follows:

"A consideration of $1 is sufficient to support an oil and gas lease by the terms of which the lessee's interest is subject to defeasance for breach of condition subsequent to drill wells and pay royalties, though he is not bound by any covenant to perform the condition."

"In an oil and gas lease, given for the consideration of $1, which provided that the lessee should drill a test well within one year and should pay a specified sum per year for the time during which the completion of the well was delayed, the consideration supports, not only the right to drill the well during the first year, but also the privilege of paying the specified sum and securing a renewal of the right, so that the right to make such payment and secure the renewal is not dependent on a subsequent agreement by the lessee to make the payment."

"The rule that unperformed contracts, optional as to one party, are optional as to both applies only to a contract which is wholly executory, in that it consists of mutual promises, each the consideration of the other, and does not apply where a consideration is paid for an oil and gas lease, which gives the lessee a present interest in the right to explore for the mineral and a contingent interest in the minerals discovered, though he has the privilege of surrendering the lease at any time."

"The lessee under an oil and gas lease for the term of ten years, and as much longer as oil and gas should be produced in paying quantities, with right to surrender the lease and be discharged from liability thereon, the consideration for which lease had been paid, was not a tenant at will, so that the doctrine that a tenancy at will of one party is at the will of the other does not apply."

"In an oil land gas lease, granting for the consideration of $1 paid by the lessee, the right to drill and operate wells and the right to the oil and gas discovered thereon, subject to a payment of royalty, a clause authorizing the lessee at any time to surrender the lease and be relieved from all liability thereon does not invalidate the lease as a matter of principle, nor according to the weight of authority or the decisions of the courts of Kentucky, where the land was situated."

We therefore hold the lease in the case at bar was not void by reason of the surrender clause. The judgment of the court below is therefore reversed and remanded, with directions to enter judgment in favor of the defendants, provided that they pay rentals at the rate of $240 per year and otherwise comply with the terms of the lease.

All the Justices concur, except KANE, J., not participating.