### CARROLL et al. v. BOWEN et al.

No. 26664. March 23, 1937.

Rehearing Denied June 8, 1937.

R. E. Bowling and Blanton, Curtis & Blanton, for plaintiffs in error.

McGuire & McGuire, for defendants in error.

HURST, J. This case involves the construction of the following clause in a deed from J. S. Bowen and Drucie Bowen, his wife, to George E. McClelland, covering a farm in Garvin county: "As a part of the consideration, the parties of the first part herewith retain an undivided one-half (½) interest in and to the royalty (the ordinary ⅛ ordinarily left the grantor in oil and gas leases being the royalty above referred to) in the above land." After the execution of this deed the Pauls Valley National Bank acquired title to said land at a foreclosure sale, and later conveyed by warranty deed the land to the plaintiff, Arthur E. Carroll, which deed made no reference to said reservation in favor of J. S. Bowen and wife. J. S. Bowen died leaving as his sole heirs his wife and three children. A dispute arose between Carroll and the Bowen heirs as to whether the latter were entitled to any bonus money from an oil and gas lease that might be executed covering said land, 'and the oil company that was negotiating for a lease refused to purchase a lease thereon until this question was determined. Thereupon, Carroll filed this suit alleging that the clause in the deed was ambiguous and asking the court to construe it to mean that the Bowen heirs were not entitled to any of the bonus, and he also joined the bank and asked judgment on its breach of warranty. The Bowen heirs answered admitting that the clause was ambiguous, and in their cross-petition alleged that it was intended by said reservation that they should share in the bonuses, rentals, and royalties, and asked judgment quieting their title accordingly. The Pauls Valley National Bank filed an answer in which it denied generally the allegations of the plaintiff's petition and the cross-petition of the Bowen heirs.

It will thus be seen that the plaintiff and the Bowen heirs assert that said clause is ambiguous and ask that the court construe it, while the bank by its general denial denies that the clause is ambiguous. Over the objection of the bank, Drucie Bowen was permitted to testify that at the time she executed the deed to McClelland it was her understanding that she and her husband reserved one-half of the **mineral rights.** The deed was drawn by a banker and not by a lawyer, and neither the banker nor McClelland testified. Drucie Bowen was the only witness who testified 'as to what the parties intended by the clause in question.

The trial court at first entered judgment decreeing that Carroll was entitled to all the bonus and rental money, but on motion for new trial reversed itself and decreed that the Bowen heirs were entitled to one-half the bonus and delay rentals as well as the royalty. From this judgment Carroll and the bank have appealed.

1. The first question for decision is whether the court was in error in permitting Mrs. Bowen to testify as to what was intended by the clause in question. If the controversy had been between Carroll and the Bowen heirs, her testimony would undoubtedly have been admissible, since both assert in their pleadings that the deed is ambiguous. But since the bank denies that it is ambiguous, and properly objected to the testimony, and its liability on its warranty will be increased if the contention of the Bowen heirs is correct, we must pass upon the question of whether the clause is ambiguous. If the clause is ambiguous, it was proper for the court to admit evidence as to what the parties intended by the language used. Wilson v. Olsen (1934) 167 Okla. 527, 30 P. (2d) 710. If it is not ambiguous, it was not proper to admit or consider such evidence. Kansas City So. Ry. Co. v. Whitaker (1925) 115 Okla. 212, 242 P. 220; Eagle Printing & Publishing Co. v. Chandler (1926) 116 Okla. 108, 243 P. 237.

We are of the opinion that the clause in question is not ambiguous, and it was error for the court to admit or consider the evidence of Mrs. Bowen. It is our duty to construe the clause in its entirety and to give ef-

fect to every word therein. When this is done, we think it is plain that the parties intended the clause to reserve an undivided one-half of the one-eighth royalty. The words in parentheses, "the ordinary ⅛ ordinarily left the grantor in oil and gas leases being the royalty above referred to," make plain what would have been otherwise ambiguous if those words had not been used. While the term "royalty" means a share of the product or proceeds therefrom, the percentage is variable. It is always agreed upon in the lease contract. Generally it is one-eighth. In the Osage Reservation, the Department of the Interior exacts a sixth. The state receives a fourth from the wells that adorn the Capitol grounds. If the parties had not inserted the words in parentheses, the instrument would have been indefinite upon the percentage of royalty to be paid by the lessee, but as the amount of the royalty reserved has been defined, such ambiguity has been removed.

2. The parties treat the clause as a reservation and make no assertion that it is void or insufficient to reserve the interest described against subsequent grantees. But whether we treat it as a reservation or an exception, it is valid and sufficient for the purposes therein intended. Dunlap v. Jackson (1923) 92 Okla. 246, 219 P. 314; Myers v. Hines (1931) 149 Okla. 232, 300 P. 309.

3. The words "bonus," "rental," and "royalty" are words of common use in this state in connection with oil and gas leases, conveyances, and reservations. Each has a definite meaning and will be construed in the ordinary and popular sense. Section 9468, O. S. 1931. The deed was executed in 1920, and for many years prior thereto Oklahoma had been one of the principal oil and gas producing states of the Union. There had been production in the vicinity of the land in question for some time prior to the execution of the deed. The terms of the clause under discussion show that the banker who drew the deed was familiar with the oil and gas business, and we must assume that the parties to the deed were likewise familiar with it. The words "bonus" and "rental" are not used in the clause, nor is there any language used that would indicate that the parties had those words in mind. To sustain the judgment of the trial court, we would be compelled to hold that the word "royalty" as defined in this instrument included the words "bonus" and "rental." This we cannot do.

The word "bonus" has a definite meaning in the oil and gas industry. It is defined in Bouvier as "a premium paid to a grantor

or vendor," and strictly is the cash consideration or down payment, paid or agreed to be paid, for the execution of an oil and gas lease. Northwestern Oil & Gas Co. v. Branine (1918) 71 Okla. 107, 175 P. 533; Carter Oil Co. v. Tiffin (1918) 74 Okla. 34, 176 P. 912; Magnolia Pet. Co. v. Saylor (1919) 72 Okla. 282, 180 P. 861; Morrison, Oil & Gas, p. 71; Summers, Oil & Gas, p. 241.

The term "rental," as used in oil and gas leases, refers to the consideration paid to the lessor for the privilege of delaying drilling operations. Northwestern Oil & Gas Co. v. Branine, supra; Magnolia Pet. Co. v. Saylor, supra; Summers, Oil & Gas, p. 591; Thornton, Oil & Gas (5th Ed.) sec. 363, p. 644.

The term "royalty" in the strict sense is held to mean a share of the product or proceeds therefrom, reserved to the owner for permitting another to use the property. Hinerman v. Baldwin (1923, Mont.) 215 P. 1103; Homestake Exploration Corp. v. Schoregge (1928, Mont.) 264 P. 388; Bellport v. Harrison (1927, Kan.) 255 P. 52; Hill v. Roberts (1926, Tex. Civ. App.) 284 S. W. 246; Aldridge v. Houston Oil Co. (1926) 116 Okla. 281, 244 P. 782; Burns v. Bastien (1935) 174 Okla. 40, 50 P. (2d) 377; Wilson v. Olsen, supra; Summers, Oil & Gas, p. 591.

The Bowen heirs rely on the following authorities in support of their argument that the reservation of the royalty as defined in the clause in question carries with it the right to participate in the bonus and rentals: Work, Sec'y of Interior, v. U. S. ex rel. Mosier (1923) 261 U. S. 352, 67 L. Ed. 693; Wright v. Carter Oil Co. (1923) 97 Okla. 46, 223 P. 835; School Dist. No. 23 v. Com'rs of Land Office of Oklahoma (1933) 166 Okla. 226, 27 P. (2d) 149; Wilson v. Olsen, supra. For the sake of completeness, we add Burns v. Bastien, supra. These cases are distinguishable from the case at bar. In the Mosier Case, the court held that under the provisions of the Act of 1906, requiring the distribution of royalties to the members of the Osage Tribe of Indians, as income, the bonus paid for leases of Indian land was deemed royalty and therefore income. The statute provided that "capital" should be held for the benefit of the whole tribe, but that "income" should be distributed to the Indians individually. The court put the question thus: "We must decide under what head bonus is to be treated,—whether as capital or income." Thus this case does not hold that, strictly speaking, bonus and royalty are one and the same thing, but only that under the statute they are both "income"

as distinguished from "capital." The problem in the instant case is more minute, and the general classification there made cannot be said to preclude the more specific classification we now find it necessary to make. The same is true of Wright v. Carter Oil Co., supra, and School Dist. No. 23 v. Com'rs of Land Office, supra, which follow the Mosier Case, supra. In the Wright Case, the only classification, as shown by the syllabus of the court, was: "Bonus, rentals, and royalty are **income** from the use of mineral sources of the land." Likewise the holding of the School District Case was that bonuses, rentals, and royalties go into the permanent school fund as "proceeds from oil and gas leases" under the statute. The statute did not require merely the payment of royalty into this fund, but the entire income from oil and gas leases.

In Wilson v. Olsen, supra, the reservation was "an undivided one-third (1/3) interest in and to all of the royalty of the gas, oil and mineral and the rights thereto." The court held that as the term "royalty" in the strict sense meant a share of the product or profit, and the addition of the words "and the rights thereto" referred to the oil and gas rights, this enlargement of the term created the ambiguity, and oral testimony was admissible to show the intention of the parties. It was then concluded that the intention was to reserve the oil and gas rights. It will be noted that the percentage of production which the royalty was to include was not specified. In the case at bar, the share of royalty is defined, and the reservation makes no reference to the oil and gas rights.

In Burns v. Bastien, supra, the reservation in the deed was as follows:

"Reserving an undivided three-fourths interest in and to all the royalties of oil, and gas under and pertaining to said premises. * * *"

The question was whether that reservation was void, and the court held that it was a valid reservation of the oil and gas rights, including by implication the right of ingress and egress. The distinction is that the amount of royalty reserved was not defined, and thus the owners of that reserved interest would have to be parties to the lease in order to determine what percentage of the production they would receive as royalty. If they must be parties to the lease, it follows that they are entitled to exact a share of the bonus and rentals. In the case at bar, the amount of royalty was defined as 1/2 of 1/8 of the production, and it is not necessary that they be parties to the lease, for their interest is defined. They have the right to that portion of the oil, gas, casinghead gas, and any by-product therefrom, and also the implied right of ingress and egress for the purpose of obtaining their portion, but that does not necessarily include the right to bonus and rentals. Reservation of royalty in the strict sense is sufficient to imply the right to ingress and egress. Newbern v. Gould (1933) 162 Okla. 82, 19 P. (2d) 157.

From an analysis of the cases referred to herein, it appears that if the reservation of "royalty" does not specify the percentage of production meant to be included therein, and where it is not made with reference to any existing lease establishing the amount, the term is ambiguous and extrinsic evidence may be examined to determine the intent of the parties. In the absence of such testimony to the contrary, the owners of the reserved "royalty" are entitled to bonus and rentals, for the reason that they must of necessity be made parties to the lease in order to establish the extent of their interest. Being parties to the lease, they would be entitled to exact a share of all the consideration therefor. But, on the other hand, where the reservation of "royalty" specifies the exact amount of the production thereby contemplated, it is not ambiguous and must be construed in its strict sense, without the introduction of parol testimony. Being construed in its strict sense, it entitles the owner thereof to only that portion of the production definitely specified. It does not carry with it the right to bonus and rentals unless so stipulated, for the owners of this interest need not be made parties to the lease and are not entitled to any consideration therefor except which has been expressly agreed upon. The reservation in the case at bar is of this latter type. The judgment is reversed, with instructions to enter judgment in accordance with the views herein expressed.

BAYLESS, V. C. J., and RILEY, CORN, and GIBSON, JJ., concur. OSBORN, C. J., and BUSBY, WELCH, and PHELPS, JJ., absent.