C. E. SYKES, Plaintiff in Error,

v.

C. F. DILLINGHAM and Rock Island Oil
and Refining Company, Defendants
in Error.

No. 37431.

Supreme Court of Oklahoma.

Oct. 1, 1957.

Rehearing Denied Nov. 26, 1957.

J. B. Moore and Fischl & Culp, Ardmore, for plaintiff in error.

Dyer & Dyer, Ardmore, for defendant in error, C. F. Dillingham.

JACKSON, Justice.

The controversy in this case (an action to quiet title) is between C. E. Sykes, as plaintiff, and C. F. Dillingham, as defendant. They will be referred to herein as they appeared in the trial court or as Sykes and Dillingham. Rock Island Oil and Refining Company is merely a "stakeholder", being in possession of a part of the funds in controversy.

The litigation stems from a clause in a mineral deed whereby Dillingham conveyed his undivided ¼th mineral interest in 30 acres of land to Sykes. This mineral deed dated October 20, 1923, otherwise in the usual form, contained the following provision: "It is agreed that the grantor shall have one-half of the bonus money derived from the sale of an oil and gas lease or extension of same on the above land." The problem is to determine whether Dillingham is entitled to one-half of the "bonus money" received by Sykes on a lease executed by him in 1952 and, if so, whether the "bonus money" would include a portion of the "excess royalty" under the 1952 lease.

The trial court found generally in favor of the defendant, Dillingham, giving him one-half of the cash bonus paid by the oil and gas lessee to Sykes as well as one-half of the "royalty" reserved by Sykes in excess of ⅛th of the production. Plaintiff, Sykes, appeals.

A review of the circumstances and the conduct of the parties will be helpful.

At the time the mineral deed in question was executed there was an outstanding oil and gas lease on the property which expired by its terms in 1924.

On May 28, 1947, Sykes executed a five year oil and gas lease to one McClure who assigned the lease to Stanolind Oil and Gas Company. The bonus for this lease

was $750 in cash and $2,250 payable out of
$\frac{1}{8}$th of $\frac{7}{8}$th of the oil produced, saved or
or sold from the premises. Sykes paid
Dillingham one-half of the $750 cash bonus
and Dillingham signed a "Receipt and
Ratification" acknowledging receipt of "all
bonus money due him under and by virtue
of the mineral deed by him to Sykes." This
lease remained in effect for the full five
years, expiring May 28, 1952. No wells
were drilled on the property; therefore, no
question was raised concerning the disposi-
tion of the $2,250 oil payment.

On April 25, 1952, and before the expira-
tion of the 1947 lease, Sykes executed a
lease in favor of one Curtis who, according
to the stipulation of the parties, was acting
for Stanolind Oil and Gas Company. This
lease was to become effective on May 28,
1952, and remain in force for five years. It
provided a cash bonus to Sykes of $1,125
for a lease on the mineral interest here in-
volved, and also provided that Sykes would
receive $\frac{40}{256}$th of all oil produced and
saved from the leased premises. It will
thus be observed that Sykes would receive
more than a $\frac{1}{8}$th royalty, the excess being
$\frac{14}{256}$th of the total production (for con-
venience called "excess royalty").

Curtis sent a check to Dillingham for
one-half of the $1,125 cash bonus. Dilling-
ham refused to accept the check contending
that he was also entitled to receive one-half
of the "excess royalty", or $\frac{7}{256}$th of any
oil that might be produced under the lease.
Production was obtained and thus arose the
controversy as to whether the clause in
the mineral deed would justify Dillingham's
claim to one-half of the cash bonus and one-
half of the "excess royalty".

By their conduct the parties agreed
that Dillingham was entitled to one-half of
the bonus money derived from the sale of
the lease in 1947. It is contended by Sykes
that the "Receipt and Ratification" signed
by Dillingham wherein Dillingham ac-
knowledged receipt of all bonus money due
him under and by virtue of the mineral
deed was a complete and final settlement of
all rights that Dillingham would ever have

under the mineral deed. He further con-
tends that his argumeint is strengthened by
the fact that Dillingham did not claim a one-
half interest in the $2,250 oil payment pro-
vided for in the 1947 lease. Dillingham con-
tends that he only receipted for all bonus
money that was due him at the time he
signed the receipt and ratified the lease, and
that no part of the oil payment was *due* at
that time and he felt that he was adequate-
ly protected if oil should be produced in the
future.

The receipt does not use the words "due
or to become due" but only the word "due".
We conclude that the "Receipt and Ratifica-
tion" did not preclude Dillingham from
claiming any bonus money that might be-
come due him after the execution of his
"Receipt and Ratification."

If the lease executed in 1952 is an exten-
sion of the lease executed in 1947, Dilling-
ham is entitled to one-half of the bonus
money provided for under the 1952 lease.

The parties were apparently of the
opinion that Dillingham was entitled to one-
half of the "bonus money" provided for in
the lease executed in 1952.

As heretofore pointed out Dillingham
refused to accept lessee's check for one-half
of the cash bonus provided for in the 1952
lease. This money, $562.50, was then de-
livered by lessee to Sykes.

In Sykes' original petition filed in the trial
court he made no mention of the cash bonus
but sought to quiet his title to the mineral
interest so that Rock Island Oil and Re-
fining Company, Inc., would deliver to him
in money the equivalent of $\frac{40}{256}$th of the
production as provided for in the 1952
lease.

After defendant, Dillingham, filed his
answer and cross-petition claiming one-half
of the bonus money and $\frac{7}{256}$th of the pro-
duction the plaintiff, Sykes, filed his answer
to the cross-petition of defendant. In this
answer plaintiff alleged that one-half of
the bonus money had been tendered by
lessee to defendant, Dillingham, and that
Dillingham refused to accept it. It was
further alleged that the bonus money had

been delivered to Sykes who was holding it in a suspense account. His answer then states that he is "willing and hereby tenders one-half of the bonus money unto the defendant" but denies that defendant is entitled to any part of the royalties.

In an amendment to his answer plaintiff, Sykes, alleged that the provision in the mineral deed for grantor to have one-half of the bonus money derived from the sale of an oil and gas lease or extension of same referred to the oil and gas lease on the property which expired in 1924 or the extension of same, or to the first oil and gas lease to be thereafter executed thereon (meaning the lease executed in 1947). It is explained in this amendment that the error in plaintiff's original answer (the tender of one-half the cash bonus) is due to the fact that plaintiff's attorney did not have knowledge of the 1947 lease at the time the original answer was prepared. We think this explanation sufficiently explains the conduct of plaintiff's counsel in preparing the original answer to defendant, Dillingham's cross-petition but fail to see how it explains plaintiff's conduct in tendering one-half of this bonus to defendant.

The lease to Curtis was executed on April 25, 1952, to take effect on May 28, 1952. The check for one-half of the cash bonus, or $562.50, was mailed by Curtis to Dillingham on August 11, 1952. Dillingham returned this check to Curtis on August 19, 1952. We are not informed when Curtis paid this money over to the plaintiff, Sykes, but we are informed that Sykes placed this money in a suspense account. We are not informed when plaintiff employed counsel but the original petition was not filed until July 19, 1955.

■ Considering the fact that the 1952 lease was written before the expiration of the 1947 lease, and was to take effect immediately following the expiration of the 1947 lease, we are of the opinion that the trial court's decision is correct to the extent that it holds that the 1952 lease was an extension of the 1947 lease. This conclusion is strongly supported by the conduct

of plaintiff subsequent to the execution of the mineral deed. We have held that the subsequent conduct of parties to a contract may be considered in arriving at their intention. Hales v. Henry Black, Ltd., Okl., 264 P.2d 355. See also Joachim v. Board of Education of Walters, 207 Okl. 248, 249 P.2d 129.

We conclude that defendant Dillingham is entitled to one-half of the cash bonus and we think it follows that he is entitled to one-half of the "excess royalty".

■ In Carroll v. Bowen, 180 Okl. 215, 68 P.2d 773, we said in the body of the opinion that "bonus" is the cash consideration or down payment, paid or agreed to be paid, for the execution of an oil and gas lease. It cannot be disputed in this case that the "excess royalty" was a part of the consideration agreed to be paid for the execution of the lease in 1952. Whether Dillingham is entitled to one-half of the "excess royalty" depends upon the intention of the parties.

■ Where there is ambiguity or uncertainty as to the meaning of the terms used in a written contract between the parties, usages and customs may be resorted to for the purpose of interpreting them and to fix and explain the meaning of the expressions and words of doubtful and various meaning. Cleveland v. Mascho, 95 Okl. 22, 222 P. 1008.

■ The trial court permitted Dillingham to show that the customary royalty reserved by lessors in Carter County and Southern Oklahoma in 1923 was 1/8th of the total production. This was proper. Carroll v. Bowen, supra.

■ Assuming the parties contracted in reference to the custom for lessors to reserve 1/8th of the total production, as the trial court apparently found, we find no error in the conclusion that Dillingham is entitled to one-half of the "excess royalty". This result follows when it is established that the parties contemplated that plaintiff would be entitled to the usual and customary 1/8th royalty and that the parties would

share equally the bonus money derived from the sale or extension of an oil and gas lease. The "excess royalty", as between plaintiff and defendant herein, was not royalty but was a part of the bonus money for the execution of the lease.

The judgment of the trial court is affirmed.