Karl M. PROBST, Doris P. Woods, Elsa P. Everett and Fredrica P. Halley, Plaintiffs in Error,

v.

Earl INGRAM, Jr., Walter W. Butcher and Texas Gulf Producing Company, Defendants in Error.

No. 39120.

Supreme Court of Oklahoma.

April 17, 1962.

Rehearing Denied July 10, 1962.

Rosenstein, Mesirow & Fist, Tulsa, for plaintiffs in error.

Brown, Darrough & Darrough, Harry C. Marberry, Oklahoma City, for defendants in error.

HUSER, Special Justice.

Earl Ingram, Jr., Walter W. Butcher and Texas Gulf Producing Company, hereinafter called plaintiffs, commenced this action against Karl M. Probst, Doris P. Woods, Elsa P. Everett and Fredrica P. Halley, hereinafter referred to as defendants, to quiet title to a certain oil and gas leasehold estate and to interpret an oil and gas lease. The trial court rendered judgment in favor of the plaintiffs and defendants appeal.

The trial below was upon an agreed stipulation of facts approved by all parties and their attorneys of record, which shows:

1. That on April 5, 1948, George C. Probst owned the following interest in oil, gas and other minerals underlying the lands hereinafter described:

### TRACT NO. 1

A $^{41.25}/_{110}$ interest in the following described lands:

Lot 1 (NE¼ NE¼) and East Half of Southeast Quarter of Northeast Quarter (E½ SE¼ NE¼) of Section 6, and Lot 4 (NW¼ NW¼) and Northwest Quarter of Southwest Quarter of Northwest Quarter (NW¼ SW¼ NW¼) of Section 5, Township 3 North, Range 2 West, Garvin County, Oklahoma, containing 110 acres, more or less.

### TRACT NO. 2

A ¼ interest in the following described lands:

Southeast Quarter of Southeast Quarter (SE¼ SE¼) and Southwest Quarter of Northeast Quarter of Southeast Quarter (SW¼ NE¼ SE¼) of Section 31 and Southwest Quarter of Southwest Quarter (SW¼ SW¼) and South Half of Northwest Quarter of Southwest Quarter (S½ NW¼ SW¼) of Section 32, Township 4 North, Range 2 West, Garvin County, Oklahoma, containing 110 acres, more or less.

2. That by oil and gas lease dated April 5, 1948, recorded in Book 276, Page 42 of the records of Garvin County, George C. Probst, a widower, leased the above described lands to Wm. J. Craig, Jr., which oil and gas lease covered the 41.25 mineral acres owned by George C. Probst in Tract No. 1 and covering the 27.50 mineral acres owned by George C. Probst in Tract No. 2.

3. Thereafter, by mineral deed dated April 6, 1948, George C. Probst, a widower, conveyed all interest in the oil, gas and other minerals in and under the above de-scribed lands to the defendants, Karl M. Probst, Doris P. Woods, Elsa P. Everett and Fredrica P. Halley, in equal shares.

4. That said oil and gas lease is now owned by the plaintiffs, or their successors and assigns, as follows:

### TRACT "A"

Earl Ingram, Jr., and Walter W. Butcher

Southeast Quarter of the Southeast Quarter (SE¼ SE¼) of Section 31, Township 4 North, Range 2 West and Lot 1 (NE¼ NE¼) of Section 6, Township 3 North, Range 2 East, Garvin County, Oklahoma.

### TRACT "B"

Texas Gulf Producing Company

Southwest Quarter of Northeast Quarter of Southeast Quarter (SW¼ NE¼ SE¼) of Section 31, and Southwest Quarter of Southwest Quarter (SW¼ SW¼) and South Half of Northwest Quarter of Southwest Quarter (S½ NW¼ SW¼) of Section 32, Township 4 North, Range 2 West, and East Half of Southeast Quarter of Northeast Quarter (E½ SE¼ NE¼) of Section 6, and Lot 4 (NW¼ NW¼) and Northwest Quarter of Southwest Quarter of Northwest Quarter (NW¼ SW¼ NW¼) of Section 5, Township 3 North, Range 2 West, Garvin County, Oklahoma.

That the total mineral acres owned by said defendants under Tracts "A" and "B" are 68.75 acres.

5. That the above described lands are included in two orders of the Corporation Commission which fix drilling and spacing units for the production of oil and gas from the Simpson Formation at quarter-quarter sections within the spaced area.

6. That four wells have been drilled on the above described tracts and have been completed as producing wells in the Simpson Formation.

Paragraph 17 of the oil and gas lease, a typewritten rider attached to the oil and gas lease, reads as follows:

"In Addition to the royalty on oil provided for above, lessee agrees to deliver to lessor one-sixteenth (¹⁄₁₆) of eight-eights (⁸⁄₈) of all oil which may be produced and saved by lessee from oil wells located on the leased premises, until the cumulative total value of the oil so delivered shall equal $82,500.00 ($1200.00 per acre for interest herein covered), at which time the obligation of this provision shall terminate. Such oil shall be delivered to the credit of lessor into the pipe line to which lessee may connect its wells, or if a pipe line connection is not available, then to such facilities as lessor may provide on the leased premises. The value of oil delivered hereunder shall be computed at the average posted market price in this field on date of delivery for oil of the same grade and gravity, or during any time there is no posted market price in this field, then at its market value at the well at time of delivery. Lessee at its option may purchase such oil, from time to time, at its value, determined above."

Plaintiffs contend that what is commonly known as the "lesser interest" clause, contained in paragraph 7 of the oil and gas lease, should be applied to the oil payment contained in paragraph 17 thereof thereby reducing the fraction of oil to be credited against the oil payment provided for in proportion to the interest owned by lessor in the entire acreage described in the lease. Plaintiffs also contend that independent of the application of the "lesser interest" clause, the language of paragraph 17 is clear and unambiguous and the meaning of said paragraph is that only ¹⁄₁₆th of ⁸⁄₈ths of all oil allocable to the interest owned by the lessor is to be credited against the amount to be paid under the oil payment.

Defendants contend to the contrary; that the "lesser interest" clause, contained in paragraph 7, has no application for the reason that the oil payment is a bonus and not rent or royalty to which said clause is specifically applicable, and that the language of paragraph 17 is clear and unambiguous with its meaning being that lessor is to receive ¹⁄₁₆th of ⁸⁄₈ths of all oil produced and saved from all of the lands described in the lease, without reduction, until the amount specified in paragraph 17 is paid.

There is no dispute that defendants are to ultimately receive the full sum of $82,500.00 mentioned in paragraph 17, provided there is production for a sufficient time. Only the rate at which same is to be paid is in dispute.

The "lesser interest" or proportionate reduction clause found in paragraph 7 of the lease reads as follows:

"In case said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in the proportion which his interest bears to the whole and undivided fee."

The oil industry recognizes three basic classes of payments that the lessee can contract to be paid to lessors under an oil and gas lease. These are commonly referred to as 'bonus', 'rentals', and 'royalty'.

Paragraph 7 is by the language thereof limited in its application to 'royalties' and 'rentals'. It does not have any application to 'bonuses'.

The question is whether the oil payment provided in paragraph 17 is to be determined to be a bonus or royalty.

█ The word 'bonus' has been judicially defined. In Sykes v. Dillingham, Okl., 318 P.2d 416, the court said:

"The word 'bonus' and 'bonus money' have a definite meaning as applied to oil and gas leases, and means the cash consideration or down payment, paid or agreed to be paid for the execution of an oil and gas lease. *However, where contracting parties so intend, it may include a portion of the production*".

█ Likewise, the word 'royalty' has a definite meaning as applied to oil and gas leases. It means the fraction of the production to be paid to the lessor or owner

of the minerals. *Nevertheless, where the contracting parties so intend, the usual royalty provisions may be altered according to the desire of the parties.*

When the parties to an oil and gas lease vary the terms of their contract from the terms generally followed, the distinction between 'bonus', 'rentals', and 'royalty' can and often does become more difficult. However, an oil and gas lease is not an inflexible instrument but is to be treated as any other contract and will be enforced according to the intention of the parties as expressed therein.

Three rules of construction or interpretation aid in a determination of this matter. One of the rules in the interpretation of contracts is to ascertain the intention of the parties thereto as expressed therein, and to give effect to the same if it can be done consistently with legal principles. In arriving at the intention of the parties to a contract, the language used therein, if it is clear and explicit and does not involve an absurdity, governs in the interpretation. The whole instrument should be read together, giving to the words and terms thereof their ordinary and accepted use and meaning, and, if possible, every part thereof should be made effective, each clause helping to interpret the others. Continental Supply Co. v. Levy, 121 Okl. 132, 247 P. 967.

Another rule of construction for resolving conflicts requires that typewritten matter in a contract be given effect over printed matter. This principle is so well settled that citation of authorities is unnecessary.

The third rule of construction is that an oil and gas lease is governed by different rules of construction from those applicable to other contracts, being construed most strongly against the lessee and in favor of the lessor. Beatty v. Baxter, 208 Okl. 686, 258 P.2d 626.

In the instant case it will be noted that paragraph 17 begins with the phrase, "In addition to the royalty on oil provided for above, lessee agrees * * *" It will be observed that the clause does not say, "*As additional royalty* on oil provided for above, lessee agrees. * * *" This would indicate that the parties meant that lessor should receive something in addition to the bonus provided, in addition to the rentals provided, and in addition to the royalty provided under the terms of the lease. Nor does the clause state that paragraph 7, the 'lesser interest' clause, shall apply to it.

Furthermore, the legal description of the land and paragraph 17 are typewritten and paragraph 7 is printed, and, in the absence of a specific statement to the contrary, it must be considered that paragraph 17 should be given effect over the provisions of paragraph 7.

The oil payment in question here, regardless of the rate at which it is payable, was certainly inserted as a further inducement to the lessor to execute the lease, and it appears, from the language used in paragraph 17, to have been considered by the parties in the nature of a bonus. We hold that said oil payment, in legal effect, is a bonus. We reach this conclusion, not on the basis that all oil or production payments contained in an oil and gas lease are bonuses, but on the basis of the meaning given same and the intention of the parties in this particular case.

We are, therefore, of the opinion that if the lessee had intended that paragraph 7 should apply to paragraph 17, he would have been more clear and specific and we hold that paragraph 7 has no application to paragraph 17 under the rules of construction and interpretation hereinabove announced.

Passing then to the question of the interpretation of paragraph 17, we have one other rule of construction available, being set forth in Title 16 Okl.St.Ann. § 14 which reads as follows:

"The words 'land,' 'real estate' and 'premises' when used herein or in any instrument relating to real property, are synonyms and shall be deemed to

mean the same thing, and unless otherwise qualified, to include lands, tenements and hereditaments; and the word 'appurtenances' unless otherwise qualified shall mean all improvements and every right of whatever character pertaining to the premises described."

█ It is our opinion that this question turns upon the construction of the phrase, " * * * lessee agrees to deliver to lessor one-sixteenth (⅟₁₆th) of eight-eights (⅞ths) of all oil which may be produced and saved by lessee from oil wells located on the leased premises, * * *" By construing this phrase most strongly against the lessee and in favor of the lessor, we find the conclusion inescapable that it simply means that lessor is to receive ⅟₁₆th of all oil produced and saved from the lands described in the lease without reduction because of the fact that lessor owned less than the full mineral interest in and under the same.

If the lessee had intended to pay lessor only in proportion to lessor's interest, he could have made this intention quite clear by the insertion of any number of simple phrases. It would have been easy to make the clause read, " * * * lessee agrees to deliver to lessor *his proportionate part of* one-sixteenth (⅟₁₆th) of eight-eights (⅞ths) of all oil which may be produced and saved by lessee from oil wells located on the leased premises * * *", to cite an example.

█ Counsel for both sides put considerable emphasis upon the construction of the phrase, "leased premises". Since the oil and gas lease contains nothing to indicate that the word 'premises' should have a different meaning, we conclude that it is synonymous with the words 'land' and 'real estate' as set forth in the above quoted statute, an oil and gas lease being an instrument relating to real property. It is also our opinion that the phrase, 'leased premises', means the land described in the oil and gas lease. In other words, it refers simply to production from the lands described in the upper portion of the oil and gas lease and does not refer to production from some other lands not mentioned in the lease.

We think the case of R. Lacy, Inc. v. Jarrett et al., Tex.Civ.App., 214 S.W.2d 692, is most directly in point. By paraphrasing the clause involved in that case and paragraph 17 in the instant case, the two clauses have the same meaning, the only differences being the amount to be paid and the fraction out of which it is payable.

As regards the cases of McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341; Hooks v. Neill, Tex.Civ.App., 21 S.W.2d 532; Pollock v. McAlester Fuel Co., 215 Ark. 842, 223 S.W.2d 813; Williams v. Sohio Petroleum Company, 18 Ill.App.2d 194, 151 N.E.2d 645 cited by counsel, it is our opinion that they are all distinguishable on the facts and are not in point.

We are, therefore, of the opinion that the trial court erred in holding that the oil payment in the amount of $82,500.00 was payable out of the proceeds of production from the sale of oil and only accruing to a ⅟₁₆th of $^{41.25}/_{10}$ of ⅞ths interest in said Tract "A", and payable out of the proceeds of production from the sale of oil only accuring to ¼th of ⅟₁₆th of ⅞ths interest in said Tract "B". We hold that the defendants are entitled to receive an oil payment in the amount of $82,500.00 payable out of the proceeds of production from the sale of oil only accuring to a ⅟₁₆th of ⅞ths interest in both Tracts "A" and "B".

Reversed with directions to enter judgment for the defendants in accordance with this opinion.

HERVEY, Special Chief Justice, and KING, NEPTUNE, WHITESIDE and OGDEN, Special Justices, concur.

FINNEY, Special Vice Chief Justice, and REYNOLDS, Special Justice, dissent.