Lively v. Federal Land Bank of Louisville et al.

Dec. 8, 1943.

E. B. Anderson, Carroll E. Byron and Ridley M. Sandidge for appellant.

Cary, Miller & Kirk and Theo W. Bates for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On May 10, 1937, the appellant, Oscar L. Lively, and appellee, the Federal Land Bank of Louisville, Kentucky, entered into a written agreement, in which Lively was called the "offeror," by the terms of which Lively agreed to purchase from the bank, upon its acceptance of Lively's offer, 130 acres of land situated in Daviess county, Kentucky, for the sum of $2,750, $600 of said amount to be paid in cash upon delivery of the deed and the balance of the purchase price, $2,150, evidenced by Lively's note payable in 33 annual installments beginning January 1, 1938, and continuing for 33 years, or until the said amount is paid in full. A few days thereafter the bank accepted Lively's offer and executed its deed conveying the land to Lively and the latter paid the initial $600 payment and executed his notes and mortgage on the land for the balance of the purchase price as stated in the contract. In April, 1938, Lively leased the 130-acre tract of land to the Ohio

Oil Company for oil and gas for a term of five years and as long thereafter as oil and gas might be produced therefrom, which lease provided for the payment to Lively of a ⅛ royalty of the gas and oil produced from the land. Also, subsequent to the execution of the lease to the Ohio Oil Company, Lively sold and conveyed ¼ of his ⅛ royalty interest to various other persons but still retained the remaining ¾ of the royalty; and, in September, 1938, he paid the bank the entire balance of the purchase price and the bank released its mortgage lien.

Some question arose between Lively and the bank concerning the royalties, whereupon, in February, 1941, Lively filed this action in the Daviess Circuit Court against the bank, setting out in his petition the contract, the execution of the deed and mortgage, and other facts substantially as stated above, and alleged for his cause of action that in the latter part of July or the first part of August, 1937, he learned that a deed for the land had been executed by the bank and left in the office of the Daviess county court clerk and he went to the clerk's office and upon reading the deed he discovered for the first time that it contained the following provision: "The grantor herein retains a 1/16 royalty interest in all the oil on and gas now being produced or which may hereafter be produced from this farm for 33 years from May 25, 1937." He further alleged that upon discovering the above clause in the deed he contacted J. A. Vittitow, the agent of the bank, and stated to him that he would not accept delivery of the deed with the above clause contained therein because he had contracted for and agreed to purchase a fee simple title to the land and had not consented or agreed to any retention of oil or gas rights therein and that the deed materially differed from his agreement to purchase; that thereupon Vittitow told him, in substance, that the purported retention of the oil and gas rights indicated in that clause was only a security devise in addition to the mortgage and note executed by him and that when the debt was paid in full the retention of the oil and gas interest as indicated in that clause would expire and cease to have any effect, and relying upon Vittitow's representation he accepted delivery of the deed, and but for such representation he would not have accepted it.

Lively also alleged that following the delivery to him

of the deed in July or August, 1937, but not before, the bank allowed him to examine a copy of the sales agreement which he had signed and then, for the first time, he discovered that there had been inserted in the agreement, without his knowledge or consent, the following clause: "The Federal Land Bank retains 1/16 oil and gas rights for thirty-three years." He further alleged that the insertion by the bank of the above clause in the sales agreement was for the purpose of altering and changing the same and with the intent and for the purpose of either retaining that interest as additional security for the payment of the purchase money debt, or with the fraudulent intent and purpose of defrauding him of an interest in the land, one of which state of facts was true, but he did not know which one was true. He further alleged that by the purported retention of an interest in the sales agreement in the deed the bank intended to retain either for security purposes, or fraudulently, for 33 years an undivided 1/16 interest in the oil and gas underlying the land purchased by him. He then alleged that the bank was then claiming ownership of an undivided ½ interest in his royalty created by his lease to the Ohio Oil Company, and that should the necessity arise the court should interpret the intention of the bank in connection with the language in the sales agreement and in the deed and that the court should construe such language and adjudge that whatever the bank undertook to retain or did retain was for security purposes only and was only an undivided 1/16 interest in and to the oil and gas underlying the land in place and was not an undivided ½ interest or any interest whatever in his royalty. He further alleged that the Sohio Corporation and the Aetna Oil Company were purchasing, and had in the past purchased, all the oil produced from the wells on the land, and had in their possession and control all the money for the oil so purchased by them, and that they were made defendants to the action in order that they might have notice of the pendency of the action and retain in their control and custody such royalty or money as was claimed by the bank, and that any disbursement thereof by them during the pendency of the action would be made at their risk.

The prayer of the petition was, in substance, for a judgment declaring void the retention of any interest made by the bank in connection with the sale of the land and that the bank had no interest in the land or

the oil and gas therein or in the proceeds of the oil produced from the land in the past or that would be produced in the future, and that if for any reason that relief should not be granted, then the court should adjudge that the purported retention of interest of the bank covered only an undivided 1/16 interest in the oil and gas in and under the land and that the bank had no other interest either in his royalty or otherwise, and further prayed for his costs and for all special, general and equitable relief.

The bank filed a general demurrer to each paragraph of the petition, which demurrer was overruled. The bank then answered in three paragraphs in which it admitted the contract of purchase, the execution and acceptance of the deed, the execution of the notes and mortgage which had been paid, and all the allegations in reference to Lively's lease to the Ohio Oil Company and the Sohio Corporation and Aetna Oil Company, but denied other material allegations with respect to the purpose and effect of the retention clauses in the contract and deed. It further alleged affirmatively that on May 14, 1937, it accepted Lively's offer to purchase the land which, at the time and before it was signed, contained the clause set out in the petition by which it retained 1/16 of the oil and gas rights for 33 years, and that on or about May 20, 1937, it delivered to Lively a copy of the sales-agreement-offer as made by him, and as accepted by it, which contained a provision therein reading as follows: "The Bank shall deliver a warranty deed, which deed shall convey said premises free and clear of all encumbrances, except oil, gas and mineral leases and reservations, if any, and except all taxes and assessments agreed to be paid by the Offeror as appears above." And it delivered a deed to Lively, which he accepted, providing for retention of oil and gas rights reading as follows: "The grantor herein retains a 1/16 royalty interest in all oil and gas now being produced or which may hereafter be produced on this farm for a period of 33 years from May 25, 1937." The bank further affirmatively alleged, in substance, that it was the intention of it and Lively with reference to the oil and gas rights as set out in the offer and the deed that the bank would and did retain title to an undivided ½ of all oil and gas in place upon or under the 130-acre tract of land, or which might be produced or removed therefrom, as well as an undivided

½ of all royalties, bonuses and rents due or to become due by virtue of oil or gas leases in respect to said land, and that the provisions in the offer and deed should be so construed.

The prayer of the answer was to the effect that the bank have judgment declaring and adjudging that it retain an undivided ½ of all oil and gas in place, upon or under the 130-acre tract of land, or which might be produced, extracted or removed therefrom, and an undivided ½ of all royalties, bonuses and rents due or to become due by virtue of oil and gas leases in respect to the land and that the petition and petition as amended be dismissed. Lively filed his reply denying all the affirmative allegations of the answer, thus completing the issues. The evidence of the respective parties was taken by depositions and upon the trial of the action the court entered judgment dismissing Lively's petition as amended, and sustained the affirmative allegations of the bank's answer, and further adjudged as follows:

"It is further considered, adjudged and ordered by the Court that by the terms of the deed executed by the defendant, The Federal Lank Bank of Louisville, to the plaintiff, Oscar L. Lively, dated May 25, 1937, * * * the defendant, The Federal Land Bank of Louisville, reserved and retained to itself and excepted from the operation of said deed an undivied one-half interest in and to the oil and gas in place in and under the tract of land containing 130 acres more or less which was described in and conveyed by said deed for a period of 33 years from May 25, 1937; and that, because of said reservation, retention and exception, the defendant, The Federal Land Bank of Louisville, is, and has been since May 25, 1937, and will be for 33 years from and after May 25, 1937, the owner of an undivided one-half interest in and to the oil and gas in place in and under said tract of land, subject to any oil and gas lease with respect thereto executed by the defendant, The Federal Land Bank of Louisville, or in which it may have joined or to which it may have consented.

"It is further considered and adjudged that the defendant, The Federal Land Bank of Louisville, is and has been continuously since April 23, 1938, the owner of an undivided one-half interest in and to the royalty reserved to the lessors in a certain oil and gas lease executed by the plaintiff and his wife to the Ohio Oil Com-

pany covering said tract of land, * * * and that the defendant, The Federal Land Bank of Louisville, will continue to be the owner of an undivided interest in and to the royalty reserved in said lease so long as the same shall remain in effect but not longer than 33 years from and after May 25, 1937. It is further considered, adjudged and ordered that the defendant, The Federal Land Bank of Louisville, is the owner of and entitled to receive immediately one-half of all monies which have arisen from the sale of oil or gas from and under said real estate under said lease on account of the royalty interest; and that the defendant, The 'Federal Land Bank of Louisville, is the owner of and entitled to receive one-half of all royalties, bonuses and rents due or to become due under said oil and gas lease or any other oil and gas lease that may be executed with respect to said real estate, for a period of 33 years from and after May 25, 1937.''

The preponderance of the evidence tends to show that Lively and his wife had an opportunity to and did read and study the mortgage and deed before they signed the note and mortgage and accepted the deed. It is virtually conceded in brief for Lively that the evidence is sufficient to sustain the chancellor's finding that the retention or exception clause in the deed retaining 1/16 royalty interest in the land conveyed, was in the deed before it was signed and accepted by Lively, and hence he does not insist on a reversal of the judgment upon that ground. But, it is insisted that (1) the retention or reservation clause in the deed was for security purposes only but not a permanent or outright retention interest in the property, and (2) if anything was retained it was only 1/16 of the oil and gas in place, rather than ½ of the royalty; and, if the bank is entitled to any part of the royalty, then it is only entitled to 1/16 of ⅛, or 1/128 undivided interest.

The retention clause in the contract retained 1/16 oil and gas rights for 33 years, while the retention or reservation in the deed retained 1/16 royalty interest. We think that under the established rule in this State, and others so far as we know, governing oil and gas leases, the retention or reservation clauses contained in the contract and deed respectively, in their final analyses, mean the same. But, if it be conceded that the two clauses are not of like import or did not retain

the same interest, yet it must not be forgotten that the preliminary contract merged in the deed which was examined and accepted by Lively with knowledge of its contents (Riner v. Catron, 230 Ky. 290, 19 S. W. (2d) 970, and cases cited therein) and, therefore, it is not material whether or not the retention clause in the contract might have purported to retain a different interest than that reserved in the deed.

Lively is the only witness who testified that the retention clause in the deed was for security purposes only. He testified that when he called the attention of Mr. Vittitow to that clause of the deed, Vittitow told him that it was for security purposes only and as soon as he paid the note or the balance of the purchase price of the property that clause would be terminated. Vittitow expressly denied that he made any such representation to Lively. Vittitow and Margaret Westerfield testified that after Lively and his wife examined all the instruments in question, namely, note, mortgage, and deed, Lively and his wife signed the note and mortgage and Lively and Vittitow then took the mortgage and deed to the county clerk's office to have them recorded and that no question was raised in regard to the retention clause. Since the evidence is in sharp conflict on that point and the chancellor saw fit to accept the evidence of Vittitow as against that of Lively, we do not feel authorized to reject Vittitow's evidence and accept Lively's and thereby substitute our own finding of fact for that of the chancellor. We have no more reason to accept the evidence of Lively and reject that of Vittitow, than the chancellor had for accepting the evidence of Vittitow and rejecting that of Lively. We conclude, therefore, that the evidence is sufficient to sustain the chancellor's finding that Vittitow did not represent to Lively that the retention clause was for security purposes only, but rather that it meant what it said, namely, that the bank, grantor, retained a 1/16 royalty interest in all the oil and gas then being produced or which may thereafter be produced from the land conveyed for 33 years from May 25, 1937.

The further argument in brief of counsel in behalf of Lively is that the retention clause purports to permanently retain an interest in real estate and that under the law the bank cannot own real estate for more than five years, and this fact or circumstance tends to corroborate the contention of Lively that the retention

clause was intended for security purposes only, since it will not be presumed that the bank intended to violate its charter. While it is the general rule in this jurisdiction that private corporations may not own real estate, except what is necessary in the operation of its business, for more than five years, but we do not think this is applicable to appellee bank which is governed by the law creating such institutions and defining its rights and authority. In the case of Federal Land Bank of New Orleans v. Cooper, 190 Miss. 490, 200 So. 729, decided March 10, 1941, the court held that a Federal Land Bank may hold land purchased at its own foreclosure sale, or any separate portion thereof, for five years, and longer with the approval of the Farm Credit Administration; that it may sell the surface to one person and the underlying minerals to another, either contemporaneously or at different times; that it may except minerals from conveyances of real estate and its right to hold land, or any interest therein, can be challenged only by the State in which the land lies, or the Federal Government from which the bank received its charter. In the depositions of Ernest Rice, president of the bank, taken in January, 1942, he stated that the bank did not have the approval of the Federal Farm Loan Board (predecessor of the Farm Credit Administration) to retain an interest in the Lively farm. However, in April following he testified that upon checking into the matter he found that his previous statement was erroneous and said that when he testified in January he had no independent recollection of the matter but upon examination of the Manual, subsection 3, of section 803, which provides, among other things, that: ''However, retention of such minerals and mineral rights for periods in excess of five years when in the Bank's opinion it is in the Bank's interest to do so, had the approval of the Farm Credit Administration.'' The Manual referred to contains the rules and regulations governing the operation of such banks which the Farm Credit Administration is authorized to make by 12 U.S.C.A. sec. 665. It appears from this authority and the evidence produced that the bank had the right and power to retain an interest in the oil and gas and that the reservation or exception contained in the deed was valid.

We now come to a consideration of the second question, whether or not the retention in the deed of ''1/16 royalty interest'' meant ½ of the royalty or meant 1/16

142

of an undivided ⅛, or 1/128 interest only in the royalty. It is shown by the uncontradicted evidence of the bank that the customary royalty in this State is ⅛ of the production. See, standard forms for Kentucky, as set out in Thornton's Oil and Gas, Willis Edition, sections 3008 to 3013, inclusive. Therefore, 1/16 royalty interest means ½ of the royalty. See, also, Stanley v. Slone, 216 Ky. 114, 287 S. W. 360. One of the questions involved in that case was somewhat similar to the question here involved. We gather from a reading of that opinion that it holds that where a deed conveyed ½ of ⅛ interest in oil and gas, ½ of the oil and gas rights in the premises was involved. The retention clause in the deed involved in the present case does not stop or end with the language, "retains a 1/16 royalty interest in all the oil and gas," but that language is followed by the further language: "now being produced or which may hereafter be produced from this farm for 33 years from May 25, 1937," which definitely negatives the idea that it was the intention of the bank to retain oil and gas in place, rather than royalties. We think the language used is entirely free from ambiguity. Keeping in mind that ⅛ production is the standard or usual royalty paid in this State to the owner, then the retention clause in the deed, read in its entirety, makes it clear that it was the intention of the contracting parties that the owner, bank, retained ½ of the royalties for 33 years.

The judgment of the lower court being in harmony with the views herein expressed, it is therefore affirmed.