JOHN J. BOGERT, PLAINTIFF-APPELLANT, v. CITIZENS FIRST NATIONAL BANK AND TRUST COMPANY OF RIDGEWOOD, DEFENDANT-RESPONDENT.

Submitted October 19, 1943—Decided January 27, 1944.

For the plaintiff-appellant, *Nicholas S. Schloeder.*

For the defendant-respondent, *Harrison & Reinhardt* (*Julian C. Harrison*).

The opinion of the court was delivered by

CASE, J. The appeal is from a judgment of nonsuit entered in the Bergen County Circuit Court at the close of plaintiff's case. On March 21st, 1936, plaintiff and defendant entered into an agreement in writing whereby the defendant undertook to sell and the plaintiff undertook to purchase certain real estate in the Village of Ridgewood. The agreement contained these provisions:

"The Seller will convey to the Purchaser by Deed of Bargain and Sale free from all encumbrance except as hereinafter mentioned, on or before the fifteenth day of April, Nineteen Hundred and Thirty Six, all that certain lot
\* \* \*. \* \* \*

"This contract is entered into upon the knowledge of the parties as to the value of the land and whatever buildings are upon the same, and not on any representations made as to character or quality.  *  *  *

"It is understood and agreed  *  *  *  that the buildings comply with municipal ordinances and regulations and the provisions of the New Jersey State Tenement House Act as enforced by the State Board of Tenement House Supervision, to be shown by the report of the department or board enforcing the same where such ordinances, regulations and said act apply.  *  *  *

"The premises above described are sold subject to zoning ordinances and restrictions of record, if any.  *  *  *

"All sums paid on account of this contract, and the reasonable expense of the examination of the title to said premises are hereby made liens thereon, but such liens shall not continue after default by the purchaser under this contract."

Title was closed on April 4th, 1936; a bargain and sale deed was given, accepted and recorded. The following facts were stipulated at the trial:

"It is stipulated that the property in question is located in a one-family residence zone in the Village of Ridgewood; that in 1931 Lannuier, the then owner, obtained from the Ridgewood Board of Adjustment an exception permitting occupancy by two families, and altered the building for that purpose; that the defendant bank acquired the property by deed from Lannuier in February, 1935, after foreclosure proceedings had been instituted on a mortgage for $10,000 held by the bank; that there were then three families occupying the premises, and such occupancy continued up to April, 1936, when the plaintiff purchased it, and thereafter until the 30th of June, 1941, when the top floor was vacated after proceedings had been commenced by the Tenement House Department against plaintiff.

"It is stipulated that the provisions of the Zoning Ordinance in Ridgewood did not permit three-family occupancy of this building at any of the times hereinbefore mentioned, or at any time thereafter.

"It is further stipulated that the building on the premises

did not comply with the provisions of the Tenement House Act at the time the contract was made and the deed delivered."

The complaint contained four counts. The first count grounded in the allegation that the building did not comply with the regulations and provisions of the New Jersey State Tenement House Act with respect to three family dwellings; the second, in the allegation that the building violated the building code of the Village of Ridgewood in the same respect; the third, in the allegation that the use of the building as a three-family dwelling was a violation of the zoning ordinance of the Village of Ridgewood; and the fourth, in the allegation that the facts sued upon in the first, second and third counts constituted a breach of the defendant's contractual duty to convey the property by deed of bargain and sale "free from all encumbrance." The third count was abandoned.

The plaintiff, at the close of his case, was nonsuited under a ruling that was summarized in its final sentence as follows:

"[The plaintiff] having accepted title, without obtaining such a report [viz., a report of the department or board referred to in the contract], I hold that the covenant merged with the deed, that it was not independent and collateral, and that therefore the plaintiff has failed to establish a cause of action, and a judgment of nonsuit will be entered."

The question before us is whether the contract, in the respects sued upon, continued as an independent, collateral obligation or was, as the trial court held, merged with the deed.

Perhaps the leading case in this state on the subject of a merger of a contract for the sale of lands with the deed later given to effectuate the contract is *Long* v. *Hartwell, Administrator*, 34 *N. J. L.* 116, wherein (at *p.* 122), it is said:

"Where, in the deed there is an absence of covenants against encumbrances, the vendee cannot resort to the contract. Until consummated, an executory contract is subject to modification. In all cases, the deed when accepted is presumed to express the ultimate intent of the parties with regard to so much of the contract as it purports to execute."

This court, citing *Long* v. *Hartwell*, with approval in *Davis* v. *Clark*, 47 *N. J. L.* 338, said: "Where a deed is

made and accepted in pursuance of an executory contract, the law presumes that it fully expresses the final intentions of the parties as to so much of the contract as it purports to execute." The decision of this court in *Blum* v. *Parson Manufacturing Co.*, 80 *Id.* 390, was made to rest upon "the well established rule that the law presumes that a deed made and accepted in fulfillment of an executory contract fully expresses the final intentions of the parties as to so much of the contract as it purports to execute." To the same effect is *Sprague* v. *Eypper & Beckmann, Inc.*, 114 *N. J. Eq.* 445. It is the general rule that the acceptance of a deed for land is to be deemed *prima facie* full execution of an executory agreement to convey and that thenceforward the agreement becomes void and the rights of the parties are to be determined by the deed, not by the agreement. The deed when accepted is presumed to express the ultimate intent of the parties with regard to so much of the contract as it purports to execute. Covenants collateral to the deed are exceptions to this rule. *Dieckman* v. *Walser,* 114 *Id.* 382.

We have it, therefore, that the acceptance of a deed for land is to be deemed *prima facie* full execution of an executory contract to convey, unless the contract contains covenants collateral to the deed.

The fourth count in the complaint has no support. It alleges that the seller "failed to convey * * * by deed of bargain and sale, free from all encumbrances" and confuses the seller's duty as to the act of conveyance with his alleged duty under what is said to be a continuing covenant in the agreement. The deed must be understood to have been accepted as a compliance with the requirements as to what the deed should contain. There are grounds upon which a purchaser may base a refusal to take title but which, in taking title, he waives. One of the fundamental reasons for an interval between the execution of a contract of sale and the delivery of the deed is to give opportunity for the purchaser, if he desires, to inform himself upon ascertainable facts concerning the property he is purchasing. Had encumbrances been disclosed, the purchaser would probably have been justified in refusing to accept title; but he accepted title and is

presumed to have been satisfied therewith. Appellant concedes that the agreement called for a bargain and sale deed, that such a deed does not ordinarily contain a covenant against encumbrances, that appellant received the sort of deed he contracted for, namely, a bargain and sale deed, and that the deed actually, and properly, contained no covenant against encumbrances; but from that he enters upon an argument wherein we do not follow, namely, that in the obligation to convey "by deed of bargain and sale free from all encumbrance" the words "free from all encumbrance" had no relation to the deed or to the circumstances surrounding the giving of the deed but on the contrary constituted a continuing and independent covenant; and this although the immediate context of the pertinent words has to do only with the act of conveyance. Such a contention is quite foreign to the practice. It assumes the surprising situation that the seller in saving himself from covenanting against encumbrances in the deed, where such a covenant would normally be placed, nevertheless resorted to the unusual method of placing the covenant in the sale agreement as a continuing undertaking collateral to the deed. A covenant against encumbrances covers a wide field of encroachments upon the right of ownership. "If the thing granted be or be liable to be diminished by the existence of an outstanding right or interest, so that the grantee does not acquire the complete dominion which the grant purports to convey, then, although the diminution of pecuniary worth may not appear and the damages may be only nominal, such right or interest is an encumbrance." *Demars* v. *Koehler*, 62 *N. J. L.* 203. But, diverse and inclusive as the covenant is, appellant argues upon no premise except that the seller undertook to convey "by deed * * * free from all encumbrance," that it was purposely omitted from the recorded deed and quite as purposely placed in the agreement, to continue after the delivery of and as an obligation parallel with the deed. If appellant is right in applying the clause as a covenant against infractions of state statutes and municipal ordinances, he would be right in applying it as a covenant against any defect in, or cloud upon, the title.

The foregoing is written with particular reference to the fourth count; however, the reasoning applies also, to some extent, to the first and second counts having to do with infractions against the Tenement House Act and the village building code. But beyond that our construction of the contract is such that the buyer carried the burden of prompt ascertainment of the facts and timely presentation of the probative report. The agreement lays stress upon the effect of such a report. No reason appears why the reports of the respective bodies should not have been obtained at once. Business prudence, even ordinary common sense, would have suggested such a course. It was, in our opinion, incumbent upon the purchaser, if he wished to benefit therefrom, to obtain a report from the appropriate department or board in season to take his position thereon at the closing of title. It was someone's duty, and there is nothing in the contract to indicate that the duty was upon the seller. It is evident that the parties anticipated an examination of the title would be made by the buyer because the contract provided that the reasonable expense of the examination would be a lien on the premises—obviously done to protect the buyer if the seller breached. A title search in the public records office would not have disclosed the violative use in question, but the plainly anticipated and easily procurable report would have done so. There is no charge of fraud or of intentional concealment; indeed there is no assertion that the purchaser did not inform himself, at or before the closing of title, of the true situation. A question asked of and answered by him on his direct examination was: "Q. Simply during those years [viz., until July 1st, 1941, when the third family occupancy was terminated under compulsion] you had been getting away with it; is that right? A. Yes, sir." Whatever might have been the right of the buyer to refuse, because of the conditions of which he now complains, to accept the proffered deed or to take the property, the fact is that he did, without objection, pay the purchase price, accept the deed—a bargain and sale deed without covenants—and take possession of the property, and when he did so he took, in our opinion, at his own risk, in so far as the present issues are concerned.

The trial court correctly found that there had been a merger of the contractual provisions sued upon with the deed. The nonsuit was properly granted.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 15.

*For reversal*—None.