### NEWMAN et al. v. KERLYN OIL CO.
#### No. 14688.

Court of Civil Appeals of Texas.
Fort Worth.

May 18, 1945.

Supplemental Opinion Oct. 23, 1945.

Tom M. Miller and Fred T. Arnold, both of Graham, for appellants.

Marshall & King, of Graham, for appellee.

BROWN, Justice.

On March 12, 1918, one E. R. Holt owned the fee simple title in and to the lands in controversy, and on such date Holt executed and delivered to John L. Hanna an oil and gas lease on such lands, the instrument retaining unto the grantor the usual and customary ⅛ of the minerals.

On March 1, 1919, Holt executed and delivered to E. R. Prideaux and J. H. Newman a certain instrument in which he conveyed to said grantees "an undivided one-sixteenth (¹⁄₁₆) interest in and to all the natural gas, oil, petroleum, coal and other minerals, and mineral substances, together with a like interest in the revenues derived from any or all of same, whether in kind or in money, in, on and under the following described lot, tract or parcel of land," etc., describing the lands in controversy.

The instrument, after describing the lands by metes and bounds, continues: "together with the right to enter thereon, open mines, drill mines, drill wells, lay pipe and erect all structures and appliances necessary and convenient in searching for, procuring, caring for, storing or removing any natural gas, oil, petroleum, coal or other minerals or mineral substances of whatever nature or kind that may be found thereon or thereunder," etc.

The instrument continues: "It is specially and expressly understood and agreed that the surface of the above described land is conveyed only for all purposes and uses above set forth. This sold and transferred, however, subject to the oil and gas lease executed on the 12th day of March, A. D. 1918, to John L. Hanna, which lease is recorded, etc."

No developments were attempted under the Hanna lease and all rights under it expired with time and by operation of law.

On April 11, 1941, Holt executed and delivered an oil and gas lease covering the said lands to one W. B. Saulsbury who, in turn, sold and assigned same to one Baird Neville, and Neville sold and assigned same to Kerlyn Oil Company, which present owner has brought about the production of oil from the lands.

Prideaux and Newman sold a fraction of their mineral interest to one L. O. Joplin. On October 8, 1941, Prideaux and Newman, as lessors, executed and delivered to Kerlyn Oil Company an oil and gas lease covering the lands in controversy and such instrument recites: "The royalties to be paid Lessor are: (a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of lessor into the pipe line to which the wells may be connected"; and such lease provides for a one-eighth royalty in and to the casing-head gas, or other

gas or gaseous substance produced, sold or used.

Said Prideaux and Newman lease contains the following clause: "Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if lessor owns an interest in said land less than the entire fee simple estate, then the royalties and rentals to be paid Lessor shall be reduced proportionately." This provision is inserted because the lease did not attempt to confine the interest conveyed to the exact fractional interest that had been acquired from Holt.

Joplin ratified and confirmed the lease executed by Holt to Saulsbury, the instrument being dated October 14, 1941.

A controversy having arisen as to the amount and extent of royalty that belongs to and should be paid to Newman, Prideaux and Joplin, these parties brought suit against Kerlyn Oil Company, asserting their rights acquired from Holt, and alleged that on October 8, 1941, they executed an oil and gas lease to the defendant company by and through which such company bound and obligated itself "to deliver to these plaintiffs one-half of one-eighth of all the oil and gas produced and saved from said premises," etc.

The defendant company answered that it was indebted to these plaintiffs in a sum equal to 1/16th of the 1/8th royalty due and payable under the lease, and tendered such amount to the plaintiffs.

Thus it is seen that the plaintiffs are here contending that when Holt sold the fractional interest in the minerals to them he only owned one-eighth at such time, and such one-eighth was the usual and customary royalty interest that is reserved unto a lessor, and that, having conveyed the 1/16th interest in the minerals in and under the lands, the effect of such deed was to convey to these plaintiffs one-half (1/2) of the one-eighth (1/8) royalty.

The cause being tried to the court, judgment was rendered to the effect that the plaintiffs are entitled to one-sixteenth of the one-eighth royalty only, and they have appealed.

During the oral argument it was made known to the court that the cause of Watkins v. Slaughter, Tex.Civ.App., 183 S.W. 2d 474, in which a writ was granted, had been submitted in our Supreme Court and that a decision in that case was expected daily, and we were requested to wait until such cause was determined by the Supreme Court before rendering an opinion in the instant suit.

The "Watkins" case was decided by the Supreme Court on May 9th, 1945, rehearing granted see 189 S.W.2d 699.

We did not believe that a disposition of the case before us depended upon the interpretation that might be given the deed in the "Watkins" case because of the absence in the deed before us of language used in the Watkins deed that moved the Court of Civil Appeals for the 7th District to hold as it did. But we are glad that the "Watkins" case decision is before us and it but strengthens our view of the instant case.

In the Watkins deed, Slaughter conveyed the lands in controversy to Watkins together with a 15/16th interest in and to the oil and gas and other minerals in and under the lands "and the grantor retains title to a 1/16th interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land." The deed further gave to the grantee all rights to rents and bonuses and expressly gave him the right to lease the lands, and this language appears in the deed: "and the grantor, his heirs or assigns shall receive the royalty retained herein only from actual production of oil, gas or other minerals on said land."

Because of the language quoted and the reference to the "royalty" reserved, the trial court held that Slaughter had retained one-half of the "royalty" and was entitled to an undivided 1/16th of the oil and gas produced and not merely 1/16 of a 1/8 royalty. The Court of Civil Appeals affirmed the judgment of the trial court but our Supreme Court reversed and rendered the case, holding that Slaughter is entitled only to 1/128 of the oil and gas produced; that is, 1/16th of the 1/8th royalty provided for in the lease.

We hold that the appellants in the case before us are in the position of one of sixteen persons to each of whom there has been conveyed an undivided 1/16th of the minerals in and under the lands in controversy. When these sixteen persons, owners of the fee, execute an oil and gas lease on the premises, with the usual and customary 1/8 royalty reserved, it is apparent that each would be entitled to only 1/128 of the oil and gas produced, 1/16 of the 1/8 royalty reserved.

Under the holdings in the "Watkins" case, supra, and Richardson v. Hart, Tex. Sup., 185 S.W.2d 563, and the cited cases: Hoffman v. Magnolia Petroleum Co., Tex. Com.App., 273 S.W. 828, and Jones v. Bedford, 56 S.W.2d 305, writ refused, and Starling v. Preston, Tex.Civ.App., 144 S. W.2d 1009; writ dismissed correct judgment, the judgment is affirmed.

### Supplemental Opinion.

No application for a writ of error having been made in this case, and the Supreme Court having, on rehearing, reversed itself and having affirmed the judgment of the trial court and of the Court of Civil Appeals in the case of Watkins v. Slaughter, 183 S.W.2d 474, we wish to alter our opinion by saying that we are still of the opinion that the holding in the above-named case does not serve to alter our views with respect to the instant case, because of the differences in the several cases cited to support our views, all of which are closely knit in fact and circumstances with the case at bar.