## SHINN et al. v. BUXTON.

### No. 3228.

Circuit Court of Appeals, Tenth Circuit.

March 25, 1946.

630

Geo. N. Otey, of Ardmore, Okl. (Paul Brown, of Oklahoma City, Okl., and R. Rhys Evans, of Ardmore, Okl., on the brief), for appellants.

Roy J. Elam, of Enid, Okl. (Glenn H. Grubb, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This appeal involves the construction and legal effect of two mineral deeds, by the terms of the first of which the appellants, Rector T. Shinn and Lottie Pearl Shinn, granted and conveyed unto John Wilver "an undivided one, one hundred-twenty-eighth (1/128) interest in and to all of the oil, gas, and other minerals" that might be produced from 159 acres of described land located in Oklahoma County, Oklahoma, for a period of twenty years. The deed recited that the conveyance was subject to the terms of an oil and gas lease to record owners, "but covers and includes the 1/16 of the full 1/8 of all of the oil royalty * * * paid under the terms of said lease." This deed was dated August 1, 1928, and was filed of record on the following October 3rd. By the terms of the second mineral deed dated March 7, 1929, Wilver conveyed the foregoing interest to Grant Buxton, whose administratrix is appellee here. The form, language and interest conveyed in both deeds are identical, so that Buxton acquired the same estate which Shinn had previously conveyed to Wilver.

It is the contention of the appellee, as framed by the pleadings in the trial court, that these deeds are ambiguous by their terms as a result of the mutual mistake of the parties, since they do not conform to or convey the interest intended to be conveyed under the terms of an antecedent written contract, in compliance of which the deed from Shinn to Wilver was exe-

HUXMAN, Circuit Judge, dissenting.

cuted. It is said that it was the mutual intention of the parties as expressed in the written agreement, that Shinn should convey, and Buxton should acquire, a non-participating 1/16th of the oil and gas under the described land for a period of 20 years from August 1, 1928, so that in the event of production by lessee, Buxton would receive every 128th barrel of oil produced under the lease. Buxton prayed that the mineral deeds be reformed accordingly.

The appellants deny the alleged ambiguity, or that the deeds fail to conform to the intentions of the parties. They assert that the deeds were intended to and did convey unto Wilver and to Buxton a 1/16th of the 1/8th, or 1/128th of the royalty interest reserved by the landowner from the existing oil and gas lease. Thus in the event of production under a 7/8ths oil and gas lease, the owner of the interest conveyed would be entitled to every 1024th barrel of oil produced from the premises. It is said that the mineral deed from Shinn to Wilver was executed August 1, 1928, and was accepted by him in full compliance with the antecedent contract between Buxton and Shinn, and since Buxton, with knowledge of the contents of the deed, never asserted any ambiguity or mutual mistake until this suit was filed, he is now barred and precluded from claiming any interest other than the 1/128th of the mineral interest as described in the deed.

The trial court sustained the contentions of the appellee Buxton, specifically finding that it was the mutual intention of the parties, as evidenced by their agreement, that Shinn should convey, and Buxton should acquire, a 1/16th non-participating interest in all of the oil and gas and other minerals for a term of 20 years from August 1, 1928 "in such manner that in the event of production of oil or gas by a lessee, the said Grant M. Buxton would receive 1/16th of the full ⅛th oil royalty, and gas rental or royalty due and to be paid by the lessee, thereby entitling the said Grant M. Buxton to receive one barrel of oil out of each 128 barrels of oil produced by the lessee from the lands therein described." The court held that the mineral deeds were ambiguous in that they did not express the true intention of the parties as embodied in the antecedent contract, and they were reformed accordingly.

The material facts are not in dispute. Prior to the execution of the agreement and deeds in question, and on or about March 23, 1928, Buxton, as the owner of the land in question, granted John Wilver "an undivided one-sixteenth interest in and to all of the oil, gas and other minerals * * * that may be produced" from the lands. The conveyance recited that it was subject to the terms of an oil and gas lease "but covers and includes 1/16th of all the oil royalty * * *, he [Wilver] owning one-sixteenth of all oil, gas and other minerals under said lands, together with one-sixteenth interest in all future events * * * for a term of 20 years from date hereof, and as long thereafter as oil and gas or either of them is produced." This conveyance was filed of record on March 24, 1928. Contemporaneously with the execution and delivery of this conveyance, Wilver granted to Buxton the identical interest in identical terms, but this conveyance was not filed of record at that time. Subsequently, Shinn negotiated with Buxton for the purchase of the land in question, but when Shinn learned of the outstanding royalty interest held by Wilver, negotiations were broken off until Buxton indicated that he would secure the royalty conveyance from Wilver, thus giving Shinn title to the land free of the royalty incumbrance.

■. Accordingly on June 20, 1928, the parties entered into an agreement which, after providing for the terms of the sale, recited that the land was subject to an oil and gas lease of record and the royalty interest held by Wilver. It was agreed that the outstanding royalty interest held by Wilver would be reconveyed to Buxton, and that Shinn would thereafter, as the owner of the land, convey to Wilver "a royalty interest for 20 years of one sixteenth (1/16) of the full one eighth (1/8) royalty, being a one-one hundred and twenty-eighth (1/128) interest in and to all of the oil or gas produced from the above described land." To comply with the contract, Buxton filed of record the previously executed royalty conveyance from Wilver, and it is agreed that the mineral deed from Shinn to Wilver dated August 1, 1928, was executed and delivered to Wilver in compliance with the antecedent agreement. Buxton's interest in the land is derived from the mineral deed executed by Wilver to him on March 7, 1929. As we have seen, these two mineral deeds from Shinn

to Wilver and Wilver to Buxton, conveying identical estates in identical language, are the subject of our controversy. Buxton, as the owner of such mineral interest, joined in the execution of the oil and gas lease presently of record, and is therefore entitled to participate in any bonuses or delayed rentals provided therein. See Carroll v. Bowen, 180 Okl. 215, 68 P.2d 773; Sykes v. Austin, 182 Okl. 299, 77 P.2d 719.

Appellee recognized, as did the trial court, that upon their face, the mineral deeds in question granted and conveyed a 1/16th of the 1/8th, or 1/128th of the royalty interest, thereby giving the grantees under the deeds every 1024th barrel of oil produced under a 7/8ths lease. It is only when we resort to the antecedent agreement that any ambiguity is imputed to the mineral deeds. The term royalty or royalty interest, as used in oil and gas parlance to define a mineral interest in land, has a well known and commonly accepted meaning. It means a share (usually 1/8th) in the oil and gas reserved to the landowner from an oil and gas lease, which when produced is delivered to the purchaser free of cost to the landowner. See Burns v. Bastien, 174 Okl. 40, 50 P.2d 377; Carroll v. Bowen, 180 Okl. 215, 68 P.2d 773; Meyers v. Central Nat. Bank, 183 Okl. 231, 80 P.2d 584; Sykes v. Austin, 182 Okl. 299, 77 P.2d 719; McCullough v. Almach, 188 Okl. 434, 110 P.2d 295; Anderson v. Commissioner, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277; Vol. 37 Words and Phrases, Perm. Ed., p. 811.

Furthermore, the phrase "1/16th of the full 1/8th of all the oil royalty," or words of similar import, is well known to the oil and gas vernacular. In Manley v. Boling, 186 Okl. 59, 96 P.2d 30, 31, the fee owner of certain land conveyed to Manley "the undivided 1/16th of all the oil and gas or other minerals under the aforesaid lands." Thereafter Manley and the then owner of the land joined in a 7/8ths oil and gas lease covering the land. When oil was produced under the lease, a controversy arose concerning the extent of Manley's interest, he contending that an "undivided 1/16th of all the oil and gas" entitled him to one-half of the 1/8th royalty. The Oklahoma court held that "if a party purchased 1/16th of the minerals, and joined with the owners of the remaining 15/16ths in a lease reserving a 1/8th royalty, his share in such royalty

would be 1/16th of such 1/8th, in the absence of any agreement to share in different proportions." "And," said the court, "the result would be the same if at the date of the purchase of the mineral interest the land were subject to an oil and gas lease." .

In Swearingen v. Oldham, 195 Okl. 532, 159 P.2d 247, 250, the grantors reserved "an undivided 1/16th of the oil, gas and other minerals under the land conveyed," but gave unto the grantees the right to lease the land for any purpose, and to collect and retain all rentals and bonuses. Thereafter the grantees executed an oil and gas lease on the land, reserving 1/8th of all the oil and gas, subject to the grantor's 1/16th interest. It was contended that the reservation of "1/16th of all the oil and gas" was a net royalty interest which was not diminished by the execution of the oil and gas lease. The Oklahoma court, relying upon the Manley case, held that the meaning of the language employed was free from ambiguity, and that the grantors as the owners of "an undivided 1/16th interest of the oil, and gas and other minerals under the land" were "entitled to 1/16th of the 1/8th royalty," or 1/128th of the royalty interest.

The same or similar phraseology has been construed by other courts in recent cases. In Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563, the mineral deed granted "an undivided 1/16th of 1/8th interest in and to all of the oil and gas and other minerals" which might be produced from described lands. As in our case, the deed further recited that the land was subject to an oil and gas lease, and it was understood and agreed that the conveyance was made subject to the terms of that lease, "but covered and included 1/16th of the 1/8th of all oil royalty and gas rentals due and to be paid under the terms of the said lease * * * it being understood that he [grantee] owned a 1/16th of 1/8th of all the oil and gas and other minerals under the said lands." As in our case, the grantee claimed that he was entitled to a 1/128th part of all the oil and gas produced from the lease. He sought reformation of the deed, alleging that the phrase "1/16th of 1/8th of all the royalty" was ambiguous as a result of mutual mistake. As in our case, the trial court sustained the grantee's contentions and reformed the instrument accordingly. The Civil Court of Appeals of Texas affirmed, 183 S.W.2d

235. The Supreme Court of that State however reversed, stating "the judgment of the trial court fails to subject the interest decreed to Hart to the terms of the existing lease and thereby limit the royalty interest in the oil produced to a 1/128th of the 1/8th royalty paid under the lease * * * or 1/1024th of all the oil or other minerals produced under the lease." The Court was of the opinion that the phrase "1/16th of 1/8th of all of the oil royalty" could reasonably have but one meaning, and that is 1/128th of all the royalty paid under the lease.

In the later case of Watkins v. Slaughter, Tex.Sup., 189 S.W.2d 699, the grantor in a deed reserved a 1/16th interest in all oil, gas and other minerals produced therefrom. The deed specifically provided that the grantor should not receive any part of the money rental paid on any future lease, but should receive the royalty reserved only from the actual production of oil and gas or other minerals from the land. The grantee executed the usual 7/8ths oil and gas lease, and the controversy arose whether the reservation of a 1/16th interest in all of the oil and gas entitled the grantor to 1/16th of the gross minerals produced, or 1/16th of the 1/8th royalty. The trial court held that the grantor was entitled to a "non-participating perpetual royalty interest equivalent to 1/16th of the gross minerals" produced from the land. The Civil Court of Appeals of Texas affirmed, and the Supreme Court, after first reversing, also affirmed. The court was of the opinion that since, according to the precise terms of the conveyance, the owners of the "1/16th interest" was to be paid only from production, and was not to receive any part of the lease bonus or rentals, the parties manifestly intended that the 1/16th interest should not be affected by the subsequent execution of an oil and gas lease. But the court was careful to point out that had the granting clause used the words "1/16th royalty interest" instead of "1/16th interest," the grantor's interest would have been 1/16th of the usual 1/8th royalty. The distinction between "1/16th interest in all the oil and gas" that may be produced from land, and "1/16th of the 1/8th royalty interest," as pointed out in the Watkins case, is exemplified in the still later case of Newman v. Kerlyn Oil Co., Tex.Civ.App., 189 S.W.2d 701. See also O'Fiel v. Brooks, Tex.Civ.App., 98 S.W.2d 266; State Nat.

Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757.

However, the Kentucky court in Lively v. Federal Land Bank of Louisville, 296 Ky. 133, 176 S.W.2d 264, 266, could perceive no demonstrable difference between the phrase "1/16th of the oil and gas rights" and "1/16th royalty interest," when used to define the mineral estate reserved by a vendor of land. In that case, a contract for the purchase of land provided that the grantor should retain a "1/16th of the oil and gas rights for 33 years" from the date of the sale, while the deed of conveyance executed in compliance with the contract, recited that the grantee "retains a 1/16th royalty interest in all of the oil and gas" produced from the land for a period of 33 years. The Kentucky court treated the phrases synonymously, holding that "1/16th royalty interest means 1/2 of the royalty" and not 1/16th of an undivided 1/8th, or 1/128th interest in the royalty. Although not relied upon or cited by the appellee, if this case supports the contentions of appellee, we regard it as in direct conflict with the reasoning of the Oklahoma court in both Manley v. Boling, supra, and Swearingen v. Oldham, supra, as well as the Texas cases, supra.

Under the articles of agreement between Shinn and Buxton, which the appellee contends control the intentions of the parties, Shinn acquired the land in question, subject to an oil and gas lease of record. Thus he became seized only with the usual 1/8th royalty interest, and he accordingly agreed to convey Wilver "a royalty interest for 20 years of 1/16th of the full 1/8th royalty." The parties further defined the interest as "being a 1/128th interest in and to all of the oil and gas produced" from the land. If there is any ambiguity or obscurity in the words used to express the intention of the parties, it is found in the manifest inconsistency which arises when we attempt to reconcile "a 1/16th of the 1/8th royalty" as being a 1/128th interest in and to all of the oil and gas produced from the land, which was at that time encumbered by a recorded 7/8ths oil and gas lease. But the contract was purely executory. It purported to convey nothing as evidenced by the subsequent execution of the mineral deed from Shinn to Wilver in admitted compliance with the contract. When the parties came to fulfill their agreement, they used words which

left no doubt of their intention. Shinn granted "an undivided 1/128th interest in and to all of the oil and gas" and other minerals that might be produced from the land for a period of 20 years, subject to an oil and gas lease, and to make plain the interest thus conveyed included "the 1/16th of the full 1/8th of all the oil royalty" paid under the terms of the lease. Thus, the contract was merged in the mineral deed from Shinn to Wilver, and it was undoubtedly examined and accepted by Buxton as in full compliance with the agreement. It is a generally accepted rule that where, as here, a deed is delivered and accepted in full compliance of a contract to convey, the contract becomes merged in the deed, and is presumed to evidence the ultimate intention of the parties. In the absence of fraud or mistake clearly and manifestly shown, the deed controls the rights of the parties, although the terms thereof may be at variance with the antecedent contract. Douglas v. Douglas, 176 Okl. 378, 56 P.2d 362; Fuqua v. Trego, 47 N.M. 34, 133 P.2d 344; Montclair Trust Co. v. Russell, 135 N.J.Eq. 570, 39 A.2d 641; Thompson v. Reising, 114 Ind.App. 456, 51 N.E.2d 488; Pybus v. Grasso, 317 Mass. 716, 59 N.E.2d 289; Bogert v. Citizens First Nat. Bank & Trust Co., 131 N.J.L. 218, 35 A.2d 706.

To justify the reformation of the deeds made in compliance with the antecedent contract, it must be convincingly clear that they do not conform to the mutual intentions of the parties as expressed in the agreement. Whittaker v. White, 169 Okl. 336, 37 P.2d 247; Ohio Casualty Ins. Co. v. Callaway, 10 Cir., 134 F.2d 788; Setterstrom v. Phelan, 182 Okl. 453, 78 P.2d 415. Here there is absolutely no proof that the deed does not evidence the mutual intention of the parties, except the possible ambiguity appearing in the contract which, as we have seen, became merged in the deed. This we deem wholly insufficient to justify the reformation of an otherwise unambiguous instrument. To us it is unambiguously plain that by the terms of the agreement and mineral deed, when considered together, Shinn intended to and did convey to Wilver a 1/128th part of the mineral estate which he owned in the land at the time the deeds were executed.

This conclusion is dispositive of all issues raised, and the judgment is reversed and re-manded with directions to proceed accordingly.

HUXMAN, Circuit Judge (dissenting).

I think the judgment of the trial court is right and should stand. In substance, this was an action to reform a deed to make it conform to the intentions of the parties as expressed in their written contract. It is not a question of interpreting the provisions of the deed from Shinn to Wilver. The question is, did Shinn convey to Wilver what he had agreed to convey? To get the correct picture, we must go back to the beginning. At the time Shinn undertook to purchase this land, Wilver was the owner of a perpetual mineral interest in the land. There is no ambiguity nor disagreement as to what the extent of this interest was. The deed under which Wilver held this interest conveyed to him in the granting clause an undivided 1/16th interest in and to all the oil, gas and other minerals under the premises. There was a lease on the premises at the time he received his interest from Buxton, so the deed also provided that it was intended that he should receive his proportionate share of any production thereunder, in the following language: "Said land being now under and oil and gas lease executed in favor of Record Holders, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes 1/16th of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease." Had production resulted from drilling operations under this lease, Wilver would have received one barrel out of each 128 produced. There is no ambiguity or uncertainty about this.

Now, let us see what happens: Apparently Shinn objected to the purchase of this land with an outstanding perpetual royalty, because in the written contract between himself and Buxton, the owner of the land, it was agreed that this outstanding perpetual oil interest, which was described as a royalty, should be reconveyed to Buxton; that Buxton should then convey the land to Shinn, free from any such royalty interest, and that Shinn then would reconvey to Wilver "a Royalty interest for 20 years of One Sixteenth 1/16 of the full one *eight* (1/8) royalty being a one-one hundred and twenty *eight* (1/128) interest in and to all of the oil or gas produced from the above described land."

There can be no question as to what this language means or what the parties understood thereby. Had Shinn taken this contract to an attorney skilled in oil law, and asked him to prepare a deed conveying that which he had agreed to convey, there could be no question of what would have been put into the granting clause. We must remember that at the time of this contract the land was subject to a lease reserving a 1/8th royalty. The only way you could give the grantee in a deed "a one-sixteenth (1/16) of the full one eighth (⅛) royalty being a one-one hundred and twenty-eight (1/128) interest in and to all of the oil or gas produced from the above described land," would be to grant and convey an undivided 1/16th of all the oil and gas under the premises. This would then give a corresponding 1/16th of the full 1/8th royalty. This would give the grantee a 1/128th interest in the full production. Was this what Wilver was to receive from Shinn? There can be no doubt of it. Shinn spelled out Wilver's interest clearly and unmistakenly in his contract when he himself interpreted what Wilver was to have as "being a one-one hundred and twenty *eight* (1/128) interest in and to all of the oil or gas produced from the above described land."

There is no ambiguity in the contract. Standing alone, there can be no question as to what Wilver would get. If it was understood that Wilver was to have an undivided 1/128th interest in the oil or gas under the premises and a corresponding interest in the 1/8th royalty reserved under the existing lease, the reasonable and obvious provision in the deed when referring to the existing lease would have been to provide that the conveyance covers and includes a corresponding 1/128th interest in the royalty reserved under the lease, and if the royalty interest was to be defined, to provide that it included a 1/128th of the full 1/8th royalty. Why drag in the fraction 1/16th if the parties did not understand that Wilver had a 1/16th of the royalty interest? If that was not the understanding, it had no logical place in the deed. It would have been just as logical, and the result would have been the same, to have said that the deed intended to include a 1/2 of the 1/2 of the 1/4th of the 1/8th of all of the full royalty; or any other combination of fractions which would have spelled out the same interest. It is of significance to me that the contract agrees to convey a 1/16th "of the full ⅛th royalty." The fraction "⅛th" merely defines the quantum of the royalty interest under the lease. The effect of the contract would have been the same if it had merely said that Shinn agreed to convey a 1/16th of the full royalty. No doubt when the scrivener prepared the deed he had this language in mind, but inadvertently injected the phrase "of all of the" after the phrase "includes the 1/16th of the full ⅛th." If this phrase is eliminated, then the deed would read as follows: "includes the 1/16th of the full 1/8th royalty." That would then be in full conformity with the contract.

The word "royalty" is sometimes defined as being an interest in production under a lease, and at other times it is employed to denote an interest in the oil under the premises. It is quite evident that Shinn and Buxton used the term in their contract, when referring to Wilver's outstanding interest, as meaning his interest in the oil under the premises, because his interest under his deed was an interest in the oil and gas under the premises, and the contract speaks of his interest as a royalty interest, and provides that he shall deed it back and Shinn then agrees that he will reconvey a 1/16th of the full royalty.

In Dunlap v. Jackson, 92 Okl. 246, 219 P. 314, the Oklahoma Supreme Court held that a deed which reserved 3/4ths of the royalty of the oil and gas reserved 3/4ths of the interest in the oil and gas under the premises, and entitled the holder thereof to 3/4ths of the royalty under a lease. In Burns v. Bastien, 174 Okl. 40, 50 P.2d 377, the deed conveyed an undivided 1/4th interest in the royalties of oil and gas in place. The Oklahoma Supreme Court held that this conveyed to the grantee an undivided 1/4th of the oil and gas under the land. It follows that when Shinn agreed to convey to Wilver a 1/16th royalty interest, whether under an existing lease or even if there had been no lease, he agreed to convey a 1/16th interest in and to the oil and gas under the premises. Only by so doing could he convey a 1/16th of the royalty under a lease.

This dissent is bottomed on the premise that there is no ambiguity in the contract between Shinn and Buxton, and that it is perfectly clear what Shinn agreed to convey. The next question, then, is, did he do it? According to the decision of the

majority, he did not, because instead of getting 1/128th of the production as provided for in the contract, Wilver or his successor in interest gets only a 1/1024th of such production.

The only reason Shinn is not compelled to convey what he agreed to convey is that it is presumed that the parties changed the contract by a new agreement under which it was agreed that Shinn was to convey to Wilver a 1/128th of the full 1/8th royalty instead of the 1/16th of the full 1/8th royalty he agreed to convey in the contract. The only evidence of such a new contract is the recital in the deed. It is argued that under the generally accepted rule that a contract becomes merged in a deed and that the deed evidences the intent of the parties, we look to the deed alone to ascertain "the ultimate intention of the parties." There is no fault to be found with the general rule. My objection is to the way the rule is applied to the facts in this case. The presumption of merger of the contract in the deed does not apply when there is, as here, an issue of mistake in the execution of the deed.

The issue of mutual mistake is in this case. It follows that the contract is not merged in the deed and we seek to ascertain the intent from all the evidence in the case. We examine the contract, the deed, and all other relevant facts and circumstances surrounding the transaction.

When the appellees alleged the existence of a mutual mistake in the execution of the deed, theirs was the burden to establish the existence of such a mistake by clear and convincing evidence. To discharge this burden, they introduced the contract. It constitutes evidence in the first instance of the strongest character. Its terms are crystal clear. It is such conclusive evidence as to the intent of the parties at the time of its execution that neither party can vary or contradict its provisions by parol testimony in the absence of a claim of fraud or mutual mistake in its execution, and none such is made here. When the contract is taken, together with the interest Wilver had in these minerals prior to Shinn's negotiations for the purchase of this land, it is reasonable to conclude that Shinn's objection was to the perpetual outstanding mineral interest, and that he agreed to reconvey and intended to reconvey a like interest for a twenty-year period.

Shinn introduced no evidence to show a contrary understanding. For some reason he did not take the stand, but submitted his testimony in the form of a stipulation in which he purports to say that he intended to convey a 1/1024th interest in the production instead of what he agreed to convey in his contract. Aside from the question whether this statement offends against the Oklahoma statute against testifying to transactions with deceased persons, it was incompetent and should not have been received, because it is in direct conflict with his written agreement, and he will not be permitted to vary that by oral statements.

The only other thing Shinn then has to rely on is the deed with its conflicting, or, to say the least, its unnecessarily irrelevant provisions in translating the mineral interest in the granting clause in terms of royalty interest under the existing lease. As pointed out, under the issue of mutual mistake the contract is not merged in the deed. The trial court was compelled to, as it no doubt did, consider the contract, the deed with its confusing and unexplainable provisions, Wilver's interest prior to the negotiations for the sale, the conduct of the parties in negotiating the sale, as evidenced by the contract, in determining whether a mutual mistake was made in the execution of the deed. As already pointed out, if the parties by the execution of the deed intended to convey a 1/128th interest in the minerals and a corresponding interest under the existing lease, why did they not say that they also intended to convey a 1/128th interest of the royalty under the lease? Why did they reach into the stratosphere and bring forth the fraction "1/16th"? Under appellants' contention, it had no more place in the deed than 1/4th or 1/20th or any other fraction. They could have used it only because they had it in mind as a part of the transaction and as a part of the interest which Wilver was to get.

It is my conclusion that all of the evidence and circumstances before the court was sufficient to sustain its judgment reforming the deed, and that the judgment should be affirmed.