**Ruth Long GALLIN et al., Appellants,**

v.

**Berry COMBS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 23, 1960.

Rehearing Denied Jan. 27, 1961.

Gladney Harville, Lexington, for appellants.

E. B. Rose, Beattyville, Grannis Bach, William P. Bach, Jackson, for appellees.

PALMORE, Judge.

By two separate deeds executed in 1944 and 1945 five of the six children and heirs of the late Ida B. Long conveyed to Berry Combs and his wife, Dovie, their undivided five-sixths interest in some 1,100 acres of land in Breathitt County inherited by them from their mother. Each of the deeds contained the following mineral exception:

"There is also reserved and excepted from this conveyance a one-sixteenth of all minerals on or under said land herein conveyed."

Subsequently a partition was effected between Combs and wife and the remaining heir, A. L. Gambill, Jr., who owned a ⅙ interest, and thereafter each of them made further conveyances involving portions of the property in question. This suit, brought by the five heirs first mentioned (hereinafter called the Long heirs) against all other parties now having interests in the property, seeks a construction of the quoted mineral exception giving it the effect of creating a ⅟₁₆ royalty interest.

No contention is made that the grantors in either deed retained to themselves an interest separate from or in addition to the interest retained in the other conveyance. It is tacitly agreed by the parties that the exception, though contained in deeds executed by different grantors, refers to the same fractional interest.

The controversy arises in this manner. Beginning with a lease in 1948 by Berry Combs and wife several oil and gas leases have been executed covering various portions of the property in dispute. Each of these leases reserved a ⅛ landlord's royalty interest in both the oil and gas. The Long heirs were not parties to any of them, and in only one, the 1948 Berry Combs lease, was it mentioned that a ⅛₆ interest was "reserved by M. J. Long heirs." The Long heirs contend that what they intended to retain in their deeds to Combs and wife was a ⅛₆ *royalty* interest, and they ask that the exception be so construed or, in the alternative, that the deeds be reformed on the basis of mutual mistake. With respect to the latter form of relief the plea of limitations is interposed, KRS 413.120(12) and KRS 413.130(3), the action having been filed in 1958.

The trial court entered judgment on the pleadings, dismissing the complaint. It is our opinion that the matter was correctly decided.

In Lively v. Federal Land Bank of Louisville, 1943, 296 Ky. 133, 176 S.W.2d 264, 265, a contract by which the bank agreed to sell and convey certain real estate contained the following provision: "The Federal Land Bank retains ⅛₆th oil and gas rights for thirty-three years." In the ensuing deed the exception read as follows: "The grantor herein retains a ⅛₆th *royalty* interest in all the oil on and gas now being produced or which may hereafter be produced from this farm for 33 years from May 25, 1937." (Emphasis added.) In view of uncontradicted evidence to the effect that the customary royalty under an oil and gas lease in this state was ⅛ of the production this court held that a ⅛₆ royalty interest meant half of the ⅛ royalty. Stated another way, and assuming the custom, a ⅛₆ royalty interest is a ⅛₆ interest in the gross production, expense free. But in passing to that conclusion the opinion of the court contained the following language:

"The retention clause in the contract retained ⅛₆ oil and gas rights for 33 years, while the retention or reservation in the deed retained ⅛₆ royalty interest. We think that under the established rule in this State, and others so far as we know, governing oil and gas leases, the retention or reservation clauses contained in the contract and deed respectively, in their final analysis, mean the same. But, if it be conceded that the two clauses are not of like import or did not retain the same interest, yet it must not be forgotten that the preliminary contract merged in the deed which was examined and accepted by Lively with knowledge of its contents * * * and, therefore, it is not material whether or not the retention clause in the contract might have purported to retain a different interest than that reserved in the deed."

This, appellants contend, is authority for the proposition that a ⅛₆th interest and a ⅛₆ royalty interest in minerals are one and the same, and in support they cite State Nat. Bank of Corpus Christi v. Morgan, Tex.Com.App.1940, 135 Tex. 509, 143 S.W. 2d 757, 761, wherein the court took judicial notice that in Texas the usual royalty in oil and gas leases was ⅛. The argument is defeated at first blush by the fact that the exception with which we are concerned in this case was not confined to oil and gas, but embraced all of the minerals. Without deciding what judicial assumptions can be made as to customary landlord royalties in oil and gas, certainly we can and do take notice that a ⅛ royalty is not customary as to other minerals. But even so, in the absence of other language in the deed

tending to indicate such an intention, we could not accede to the theory that a ⅟₁₆ interest is the same thing as a ⅟₁₆ royalty interest.

A royalty interest created by grant or reservation prior to lease is commonly referred to as a perpetual nonparticipating royalty. The owner of such an interest is not privileged to enter on the land and produce oil and gas and thus has no authority in the execution of leases covering the mineral estate. The mineral fee owner has the sole privilege of drilling for and producing the oil and gas and, therefore, the sole legal power to execute a lease to a third person. The nonparticipating royalty owner is entitled to his stipulated portion of the production expense free. Where instruments of conveyance have used the words "royalty" or "profits" in describing the interest intended to be granted or reserved, the courts generally have held a royalty interest was created, but where the grant or reservation is expressed merely in terms of an interest in the oil, gas, or other minerals it is ordinarily held that a mineral fee interest is created. Summers, The Law of Oil and Gas, Vol. 3A, § 599.

In the instant case we regard the language of the exception as clear and unambiguous. It retained a ⅟₁₆ fee interest in the minerals in place. That interest could not be leased by the grantees and their successors and remains in the Long heirs regardless of the leases in which they did not join. Should development be attempted and production realized under the leases despite their nonjoinder there can be no doubt that the Long heirs could recover ⅟₁₆ of the gross production less a proportionate share of the cost of extracting and marketing. Kentucky West Virginia Gas Co. v. Hatfield, 1935, 260 Ky. 315, 85 S.W. 2d 672. Thus the difference between their interest and a nonparticipating royalty interest is the expense of producing and marketing their share of the mineral involved. But if the lessees should decline to develop the property without the signatures of the Long heirs, just what their ⅟₁₆ fee interest may be translated into in the form of a royalty becomes a matter of bargaining.

Proceeding to the question of limitations, appellants say that until the year preceding the commencement of this action they never had any notice or reason to believe their interest was questioned, or that there was any difference of opinion or claim as to its nature and extent. They cite Elk Horn Coal Corp. v. Hackworth, 6 Cir., 1932, 61 F.2d 304, wherein a suit for reformation was brought 21 years after execution of the instruments and it was held that the defense of laches was not sustained by the evidence. The case is not in point. Laches and limitations are not the same thing. The defense of laches is akin to estoppel, and ordinarily would be interposed where limitations either have not run or are inapplicable. Cf. Hardwick's Ex'r v. West, 1943, 293 Ky. 8, 168 S.W.2d 353; 34 Am.Jur. 15 (Limitation of Actions, § 5). "While laches is similar to statutory limitations, there is a substantial difference between them. Laches differs from limitations in that limitations are concerned with the fact of delay; laches, with the effect of delay; * * *." 30 C.J.S. Equity § 112, p. 522. Originally one was a defense in legal actions and the other in equitable proceedings only. Ibid.

The opinion in Elk Horn Coal Corp. v. Hackworth, supra, does not indicate whether the statute of limitations was available or was pleaded in defense. In the present case it clearly applied under KRS 413.130(3) if not under KRS 413.120 (12). It is therefore unnecessary that we consider whether the type of mistake claimed by appellants was a proper ground for reformation.

The judgment is affirmed.